**CITY OF CLEVELAND, OHIO,**
Petitioner,

v.

**FEDERAL POWER COMMISSION,**
Respondent,

**Cleveland Electric Illuminating Co., Intervenor.**

No. 73–1282.

United States Court of Appeals, District of Columbia Circuit.

July 1, 1977.

Opinion On Motion For An Order Directing Compliance With Mandate.

Before FAHY, Senior Circuit Judge, and ROBINSON and WILKEY, Circuit Judges.

Opinion for the Court filed by SPOTTS-WOOD W. ROBINSON, III, Circuit Judge.

SPOTTSWOOD W. ROBINSON, III, Circuit Judge:

This litigation confronts us a second time. On its first appearance in this court, we held that the Federal Power Commission erred in adopting a schedule of rates filed by Cleveland Electric Illuminating Company (CEI), a public electric utility, without resolving the persisting claim of its munici-

pal customer, the City of Cleveland, Ohio, that the rates exceeded those to which the parties had previously agreed for service to be supplied to the City.[1] Our mandate directed further proceedings by the Commission,[2] and a controversy now rages over the scope of the investigation that the Commission is thus obliged to make. When we recall the pertinent events[3] and consult well settled legal principles,[4] we are led to another adjudication in favor of the City.

I

Over a period of time, representatives of the City and CEI worked out the details of a load transfer service, including rates therefor.[5] Responsively to the City's charter, its City Council enacted an ordinance authorizing execution of a contract with CEI at rates specified therein.[6] A letter agreement was signed, and with modifications was submitted to and accepted by the Commission for filing as a rate schedule.[7] A dispute subsequently arising, however, bared a "ratchet clause"[8] appearing in the letter agreement—and by its filing eventuating into the rate schedule—which was not mentioned in the ordinance or, according to the City, discussed during the antecedent negotiations.[9]

In litigation before the Commission and later before this court, the City contended that the filed rates did not coincide with the rates contracted for, and thus that the rate schedule was subject to appropriate revi-

1. *City of Cleveland v. FPC,* 174 U.S.App.D.C. 1, 525 F.2d 845 (1976).

2. See *id.* at 13, 525 F.2d at 857.

3. Synopsized in Part I *infra.*

4. Discussed in Part II *infra.*

5. *City of Cleveland v. FPC, supra* note 1, 174 U.S.App.D.C. at 2–3, 525 F.2d at 846–847.

6. *Id.* at 3, 525 F.2d at 847.

7. *Id.* at 3 & n.11, 525 F.2d at 847 & n.11.

8. As explained in our prior opinion,
 [t]he ratchet clause provides in substance that when the amount of electrical energy actually supplied by CEI exceeds the amount called for by the letter agreement, the contract demand will thereupon increase by the amount of the excess. The practical effect of this provision is that each time consumption of energy above that specified in the agreement rises to a new level, the demand charge is elevated to that new level and is never reduced, even if actual demand thereafter declines substantially. The impact of the clause thus is upon the ultimate dollar amount owed by the City rather than upon the rate determining the charge for the energy used.
 *Id.* at 7, 525 F.2d at 851 (footnote 47, setting forth the text of the ratchet clause, omitted).

9. *Id.*

sion.[10] The Commission disagreed [11] but, for reasons articulated in our opinion, we found the City's argument persuasive enough to require investigation and adjudication of its claim.[12] We accordingly reversed the Commission on this score [13] and remanded the case for further proceedings consistent with the opinion.[14]

On remand, the parties deadlocked on the breadth of the inquiry which the Commission was summoned by our mandate to make. After a settlement conference failed to achieve visible progress, the Commission's staff moved for an order establishing a schedule for briefs addressing the matters to be considered.[15] By CEI's interpretation of the mandate, the sole question was the role of the ratchet clause,[16] while the City insisted that the issue properly extended beyond to other energy charges for which it was billed, and which allegedly were also inconsistent with the parties pre-filing bargain.[17] The Commission concurred in the position advanced by CEI,[18] and we are

asked to direct compliance with the mandate as the City reads it.

## II

 The decision of a federal appellate court establishes the law binding further action in the litigation by another body subject to its authority.[19] The latter "is without power to do anything which is contrary to either the letter or spirit of the mandate construed in the light of the opinion of [the] court deciding the case," [20] and the higher tribunal is amply armed to rectify any deviation through the process of mandamus.[21] "That approach," we have said, "may appropriately be utilized to correct a misconception of the scope and effect of the appellate decision." [22] These principles, so familiar in operation within the hierarchy of judicial benches,[23] indulge no exception for reviews of administrative agencies.[24] Our mission thus becomes defi-

**10.** *Id.*

**11.** *City of Cleveland v. Cleveland Elec. Illuminating Co.,* (Opinion No. 644), 49 F.P.C. 118, 120, *rehearing denied,* (Opinion No. 644–A), 49 F.P.C. 631 (1973). See also *id.* at 126, 131 (examiner's initial decision) (1972).

**12.** *City of Cleveland v. FPC, supra* note 1, 174 U.S.App.D.C. at 9–13, 525 F.2d at 853–857.

**13.** We affirmed the Commission on all other points. *Id.* at 5–7 nn.36–38, 525 F.2d at 849–851 nn.36–38.

**14.** *Id.* at 13, 525 F.2d at 857.

**15.** *City of Cleveland v. Cleveland Elec. Illuminating Co.,* Docket Nos. E–7631, E–7633, E–7713 (F.P.C. Nov. 5, 1976) (order establishing briefing schedule) (unreported).

**16.** *Id.* at 2.

**17.** *Id.* at 1–2.

**18.** *Id.* at 2. The Commission stated no ground for its action save the same construction given our mandate by CEI.

**19.** *Briggs v. Pennsylvania R.R.,* 334 U.S. 304, 306, 68 S.Ct. 1039, 1040, 92 L.Ed. 1403, 1405 (1948); *United States v. United States Dist. Court,* 334 U.S. 258, 263–264, 68 S.Ct. 1035, 1037–1038, 92 L.Ed. 1351, 1355–1356 (1948); *Baltimore & O. R.R. v. United States,* 279 U.S. 781, 785, 49 S.Ct. 492, 493, 73 L.Ed. 954, 956

(1929); *In re Sanford Fork & Tool Co.,* 160 U.S. 247, 255, 16 S.Ct. 291, 293, 40 L.Ed. 414, 416 (1895).

**20.** *Yablonski v. UMW,* 147 U.S.App.D.C. 193, 195, 454 F.2d 1036, 1038 (1971), *cert. denied,* 406 U.S. 906, 92 S.Ct. 1609, 31 L.Ed.2d 816 (1972), quoting *Thornton v. Carter,* 109 F.2d 316, 320 (8th Cir. 1940).

**21.** *Yablonski v. UMW, supra* note 20, 147 U.S. App.D.C. at 195–196, 454 F.2d at 1038–1039 and authorities collected in notes 13–19.

**22.** See *id.* at 195, 454 F.2d at 1038 and authorities collected in note 13.

**23.** See generally 1B J. Moore, Federal Practice ⌐ 0.404[10] (2d ed. 1948).

**24.** See *United Gas Improvement Co. v. Continental Oil Co.,* 381 U.S. 392, 406, 85 S.Ct. 1517, 1525, 14 L.Ed.2d 466, 475 (1965); *FCC v. Pottsville Broadcasting Co.,* 309 U.S. 134, 140, 145, 60 S.Ct. 437, 440, 442–443, 84 L.Ed. 656, 660, 663 (1940); *Mefford v. Gardner,* 383 F.2d 748, 758 (6th Cir. 1967); *Morand Bros. Beverage Co. v. NLRB,* 204 F.2d 529, 532 (7th Cir.), *cert. denied,* 346 U.S. 909, 74 S.Ct. 241, 98 L.Ed. 407 (1953). *Cf. FTC v. Colgate-Palmolive Co.,* 380 U.S. 374, 379, 85 S.Ct. 1035, 1039–1040, 13 L.Ed.2d 904, 911 (1965). We are mindful that "an administrative determination in which is imbedded a legal question open to judicial re-

nition of the exploratory obligation which our mandate laid upon the Commission, and for guidance we refer to our previous opinion.[25]

When this case was here before, we faced "centrally the question whether the Federal Power Commission erred in adopting a rate structure specified in a schedule filed by a public electric utility without resolving its municipal customer's contention that the schedule contravenes a preexisting agreement between the parties."[26] The City's major "contention[ ] [was] that the Commission erred . . . in adhering to the rates filed by CEI despite the claim[ ] that they did not accurately reflect those previously agreed to";[27] the City's "primary argument [was] that CEI's filings with the Commission, which eventuated as the schedule governing the rates payable until the Commission fixed rates of its own, departed from the preexisting agreement of the parties."[28] To be sure, the only specific instance of inconsistency identified by the

City's briefs was the ratchet clause,[29] which accounts for the emphasis that we gave it in our opinion,[30] but the basic issue presented and decided loomed much larger. At stake was the pervasive view, espoused by the City, "that where the parties have agreed to rates, only the rates agreed upon can be filed, and that in such instances it is error, which the Commission can later correct, to accept for filing a rate schedule which does not accurately reflect the parties' agreement."[31]

So, the ratchet clause becomes something of a focal point because assertedly it was a manifestation of divergence of the rates agreed to and the rates filed.[32] And indubitably, our decision encompassed, not the ratchet clause alone, but the vice of any such divergence.[33] The key elements of our holding were that "the proposition that a filed rate variant from an agreed rate is nonetheless the legal rate wages war with basic premises of the Federal Power

view does not impliedly foreclose the administrative agency, after its error has been corrected, from enforcing the legislative policy committed to its charge." *FCC v. Pottsville Broadcasting Co., supra,* 309 U.S. at 145, 60 S.Ct. at 442, 84 L.Ed. at 663. See also *NLRB v. Food Store Employees Union,* 417 U.S. 1, 9, 94 S.Ct. 2074, 2080, 40 L.Ed.2d 612, 618 (1974); *United Gas Improvement Co. v. Continental Oil Co., supra,* 381 U.S. at 406, 85 S.Ct. at 1525, 14 L.Ed.2d at 475; *FTC v. Colgate-Palmolive Co., supra,* 380 U.S. at 379, 85 S.Ct. at 1040, 13 L.Ed.2d at 911. To this stage of the litigation, however, only purely legal questions have emerged and no aspect of congressional policy is involved, certainly as yet. See notes 19–23 *supra* and accompanying text.

25. It has long been recognized that the court's opinion may be consulted to ascertain the intent of the mandate. *In re Sanford Fork & Tool Co., supra* note 19, 160 U.S. at 256, 16 S.Ct. at 293, 40 L.Ed. at 417; *FTC v. Standard Educ. Soc'y,* 148 F.2d 931, 932 (2d Cir. 1945); *Independent Nail & Packing Co. v. Perry,* 214 F.2d 670, 672 (7th Cir. 1954); *Ohio Oil Co. v. Thompson,* 120 F.2d 831, 835–836 (8th Cir.), *cert. denied,* 314 U.S. 658, 62 S.Ct. 112, 86 L.Ed. 528 (1941). That may now be all the more necessary since the mandate may—and at least in this circuit ordinarily does—consist of no more than the court's opinion and judgment. See Fed.R.App.P. 41(a).

26. *City of Cleveland v. FPC, supra* note 1, 174 U.S.App.D.C. at 2, 525 F.2d at 849.

27. *Id.* at 5, 525 F.2d at 849.

28. *Id.* at 7, 525 F.2d at 851.

29. A rereading of the City's briefs on its original appeal to this court confirms the impression with which we were then left—that the claim of incongruence was created solely by the ratchet clause, an understanding mirrored in our prior opinion. That focus on the ratchet clause is without real significance, however. The City's arguments throughout had been cast more broadly in terms of disharmony between the rate schedule and the antecedent agreement; and the pivotal question which all parties freely addressed, and which unmistakably we decided, was the need for reconciliation of the two before approval of the schedule. In this milieu, mention of the ratchet clause was simply shorthand for reference to the larger problem.

30. *City of Cleveland v. FPC, supra* note 1, 174 U.S.App.D.C. at 7–13, 525 F.2d at 851–857.

31. *Id.* at 10, 525 F.2d at 854.

32. See *id.* at 7, 525 F.2d at 851.

33. *Id.* at 7–12, 525 F.2d at 851–856.

Act"; [34] "that a contracted rate cannot be changed by the unilateral act of either party to the contract"; [35] and "that a utility is no more at liberty to alter an agreed rate as yet unfiled than it is to depart from one that has been filed." [36]

In sum, our decision would have been the same had incongruence of the pre-filing agreement and the filed schedule been suggested by some other identified discrepancy. Fairly read, our opinion maintained the thesis that any material variation between the two, however evidenced, would jeopardize the rates on file. It follows that other features of the energy charges of which the City complains, if not ingredients of the parties' pre-filing understanding, would equally have that effect.

■ We thus reject the Commission's proposal to confine the inquiry on remand to the impact of the ratcheting clause. The mandate rule,[37] as is readily apparent, is a specific application of the doctrine commonly known as the law of the case.[38] We are advertent to the consideration that the doctrine, unlike res judicata,[39] does not apply to points not decided on a previous appeal, even though they then could have been.[40] But the " 'law of the case,' . . . when used to express the duty of a lower court to follow what has been decided by a higher court at an earlier stage of the case, applies to everything decided, either expressly or by necessary implication," [41] and so it does here.[42] Our prior decision inexorably outlaws all unilateral alterations of agreed-upon rates, and our mandate requires the Commission to determine whether the energy charges, no less than the ratchet clause, are of that ilk. The City's motion for direction of compliance is accordingly granted,[43] and our order will so provide.

*Motion granted.*

**34.** *Id.* at 10–11, 525 F.2d at 854–855.

**35.** *Id.* at 11, 525 F.2d at 855.

**36.** *Id.* at 12, 525 F.2d at 856.

**37.** See text *supra* at notes 19–20.

**38.** See *In re Sanford Fork & Tool Co., supra* note 19, 160 U.S. at 255, 16 S.Ct. at 293, 40 L.Ed. at 416; *Banco Nacional de Cuba v. Farr,* 383 F.2d 166, 178 (2d Cir. 1967), *cert. denied,* 390 U.S. 956, 88 S.Ct. 1038, 19 L.Ed.2d 1151 (1968); *In re United States Steel Corp.,* 479 F.2d 489, 493–494 (6th Cir.), *cert. denied,* 414 U.S. 859, 94 S.Ct. 71, 38 L.Ed.2d 110 (1973); *United States ex rel. Epton v. Nenna,* 318 F.Supp. 899, 906 (S.D.N.Y.1970).

**39.** The rule of res judicata, applicable only to new litigation between the same parties or privies on the same cause of action, bars relitigation not only of issues adjudicated but also of those which could have been raised and decided in the earlier proceeding. See *National Savs. & Trust Co. v. Rosendorf,* 182 U.S.App. D.C. — at — n. 26, 559 F.2d 837 at 840 (1977).

**40.** *Hartford Life Ins. Co. v. Blincoe,* 255 U.S. 129, 136, 41 S.Ct. 276, 278, 65 L.Ed. 549, 552 (1921); *In re Sanford Fork & Tool Co., supra* note 19, 160 U.S. at 257–259, 16 S.Ct. at 293–294, 40 L.Ed. at 417; *Salvoni v. Pilson,* 86 U.S.App.D.C. 227, 231, 181 F.2d 615, 619, *cert. denied,* 339 U.S. 981, 70 S.Ct. 1030, 94 L.Ed. 1385 (1950); *Cataphote Corp. v. Hudson,* 422 F.2d 1290, 1296 (5th Cir. 1970).

**41.** *Munro v. Post,* 102 F.2d 686, 688 (2d Cir. 1939). Accord, *Lehrman v. Gulf Oil Corp.,* 500 F.2d 659, 663 (5th Cir. 1974), *cert. denied,* 420 U.S. 929, 95 S.Ct. 1128, 43 L.Ed.2d 400 (1975); *Cherokee Nation v. Oklahoma,* 461 F.2d 674, 678 (10th Cir. 1972), *cert. denied,* 409 U.S. 1039, 93 S.Ct. 521, 34 L.Ed.2d 489 (1972); *United States ex rel. Epton v. Nenna, supra* note 38, 318 F.Supp. at 906. See also *Thornton v. Carter, supra* note 20, 109 F.2d at 319.

**42.** See text *supra* at note 24.

**43.** The City obviously seeks relief in the nature of mandamus. See note 21 *supra* and accompanying text.