SOUTHEAST ALASKA CONSERVA-
TION COUNCIL, INC., Plaintiff,

v.

James WATSON, et al., Defendants,

and

Pacific Coast Molybdenum Company, et al., Intervenors-Defendants.

Civ. No. J81-12.

United States District Court,
D. Alaska.

April 2, 1982.

---

Durwood J. Zaelke, Jr., Michael R. Sherwood, Sierra Club Legal Defense Fund, Inc., Juneau, Alaska, for plaintiff.

Michael Spaan, U. S. Atty. for Alaska, Cynthia Pickering, Atty., Land & Natural Resources Division, Dept. of Justice, Anchorage, Alaska, for defendants.

Clyde O. Martz, Charles L. Kaiser, Davis, Graham & Stubbs, Denver, Colo., Michael T. Thomas, Robertson, Monagle, Eastaugh & Bradley, Anchorage, Alaska, for intervenors-defendants.

## MEMORANDUM AND ORDER

VON DER HEYDT, Chief Judge.

THIS CAUSE comes before the court on motion of U. S. Borax Chemical Corporation (U. S. Borax) for entry of final judgment and for vacation of preliminary injunction. U. S. Borax's motion follows the submission by federal defendants of the Forest Service's Decision on Remand (Remand Decision), pursuant to the court's order of 13 November 1981. *See Southeast Alaska Conservation Council v. Watson (SEACC I),* 526 F.Supp. 202 (D.Alaska 1981).

In *SEACC I,* the court held that § 503(h)(3) of the Alaska National Interest Lands Conservation Act of 1980 (ANILCA), Pub.L.No.96–487, 94 Stat. 2371 (1980), requires an environmental impact statement (EIS) prior to the authorization of bulk sampling within U. S. Borax's molybdenum mining claim in the Misty Fjords National Monument. The court remanded the case to the Forest Service for further consideration of whether the 1980–83 amendments to the U. S. Borax 1980–83 Plan of Operations involve bulk sampling. *SEACC I,* 526 F.Supp. at 209. Nearly four months after the court's order, federal defendants submitted the Remand Decision. The Forest Service concluded that the 1980–83 amendments do not constitute bulk sampling.

## I. SCOPE AND STANDARD OF REVIEW

■ As recognized in *SEACC I,* the court must examine the Forest Service's action by scrutinizing the administrative record at the time of the agency decision. *SEACC I,* 526 F.Supp. at 206 (citing *Asarco, Inc. v. U. S. Environmental Protection Agency,* 616 F.2d 1153, 1158 (9th Cir. 1980)). Since the Forest Service has not indicated whether it considered any evidence outside the original administrative record, the court must conclude that it adhered strictly to the initial record.[1] (Indeed it is apparent from the Remand Decision that the Forest Service based its decision upon a comparison of the 1980–83 amendments with the bulk sampling described in the 1977 EIS. *See* Remand Decision at 1). Consequently, the court will not go beyond the initial administrative record when reviewing the Remand Decision.

■ The proper standard for review of the Remand Decision is whether it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." Administrative Procedure Act, 5 U.S.C. § 706(2)(A) (1976). Section 706(2)(A) is applicable because the Remand Decision has the substantive effect, if affirmed, of allowing the 1980–83 operating plan and amendments to proceed. *See Warm Springs Dam Task Force v. Gribble,* 621 F.2d 1017, 1027 (9th Cir. 1980) (substantive decision of allowing project to proceed reviewed under § 706(2)(A)). In applying § 706(2)(A), the court must consider whether the Remand Decision was based "on a consideration of all the relevant factors and whether there has been a clear error of judgment." *Citizens To Preserve Overton Park v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 824, 28 L.Ed.2d 136 (1971). In essence, § 706(2)(A) as applicable here requires the court to determine if the Remand Decision is in accordance with *SEACC I,* the law of the

---

1. The court is well aware of the mandate that "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Camp v. Pitts,* 411 U.S. 138, 142, 93 S.Ct. 1241, 1244, 36 L.Ed.2d 106 (1973) (per curiam); *Asarco, Inc. v. U.S.E.P.A.,* 616 F.2d 1153, 1159 (9th Cir. 1980). Voluminous evidence, going beyond the administrative record, has been filed in this case. Cognizant that a court may find it necessary to go beyond the administrative record to properly evaluate, explain, and provide background for agency action the court allowed the filing of evidence beyond the initial administrative record. *See Asarco,* 616 F.2d at 1159–60. Nevertheless, the court based its decision in *SEACC I* only on the administrative record, and has continued to stay within that record when reviewing the Remand Decision.

case, and whether the Forest Service considered all the relevant factors in making its determination. If the Forest Service has provided a reasoned basis for its decision, which does not substantially deviate from *SEACC I*, the Remand Decision must be affirmed. *See Asarco*, 616 F.2d at 1161.

## II. REVIEW OF THE REMAND DECISION

### A. *The Essence of SEACC I and Bulk Sampling*

In analyzing the bulk sampling process in *SEACC I*, the court began by reviewing the 1977 EIS which gave a description of bulk sampling and the U. S. Borax bulk sampling phase. *See* U.S.D.A. Forest Service Environmental Statement U. S. Borax Mining Access Road For The Quartz Hill Project, 18 July 1977 (plaintiff's exhibit no. 6) [hereinafter 1977 EIS]. In the 1977 EIS bulk sampling was described as:

> a process involving underground mining . . . done for the purpose of checking core drilling results . . . [The bulk sampling] will be by shaft, tunnel or a combination of both. U. S. Borax anticipates 3,000 to 7,000 feet of drift or tunnel approximately 8′ × 12′ and excavating up to 60,000 tons of rock.

1977 EIS at 4. After the blasting and excavation of the tunnels, the blasted rock is "hauled to an outside storage bin by standard underground load-haul-dump equipment." *Id.* at 6. The sample retained is crushed and screened; a representative sample is then collected and removed for pilot plant testing. As the court noted:

> The pilot plant test facility is located outside the mine site. *The amount of rock shipped to the pilot plant is environmentally irrelevant.* Environmentally, the concern must center on the number and size of the tunnels. This is because the amount of blasting as well as the total amount of rock excavated is directly correlated to the number and size of the tunnels.

*SEACC I*, at 208 n. 19 (emphasis added). It is environmentally relevant, however, that the crushed rock which is not shipped to the pilot plant is stockpiled or spread on the mine site. *See* 1977 EIS at 6.

Following review of the general description of bulk sampling found in the 1977 EIS, the court compared the two previous U. S. Borax bulk sampling plans with the 1980–83 proposed amendments.

> The U. S. Borax 1976 bulk sampling plan proposed one to five tunnels with 8′ × 12′ openings for a total length of 3000 to 7000 feet. Additionally, an on-site crushing plant and a sampler were required [1977 EIS] at 4, 6 & 23. The 1979 bulk sampling plan proposed one tunnel with a 6′ × 8′ opening for a total length of up to 7000 feet. Again, an on-site crushing plant and a sampler were required. 1979 Operating Plan, Quartz Hill Project at 3 & 4 (plaintiff's exhibit no. 8); Study Plan, U. S. Borax Bulk Sampling at 1 (plaintiff's exhibit no. 9). The 1980–83 amendments allowed the construction of two tunnels, each with 7′ × 8′ openings for a total length of 5,300 feet. An on-site crushing plant and a sampler were allowed. U. S. D. A. Forest Service Environmental Assessment at 3, 4 & 23 (plaintiff's exhibit no. 17).

*SEACC I*, 526 F.Supp. at 209. The court then concluded that it is apparent the 1980–83 amendments allow the same magnitude of activity which was declared to be bulk sampling in 1976 and in 1979. Thus, the court remanded the case to the Forest Service for consideration, consistent with the court's memorandum, of whether the 1980–83 amendments constitute bulk sampling.

### B. *The Essence of the Forest Service Remand Decision*

The Forest Service concluded that the 1980–83 amendments did not involve bulk sampling because the amendments are distinguishable from the bulk sampling described in the 1977 EIS "in size, method, and purposes of operation." Remand Decision at 1. In describing the purpose of bulk sampling the Forest Service asserted: "The ultimate objective of bulk sampling is to obtain a sufficient quantity of representa-

tive ore to provide information for the best plant design to process the ore." *Id.* at 2. Next, the Forest Service pointed out that the 1976 bulk sampling plan called for a 5,000-ton sample to be drummed and shipped out to the pilot plant. *Id.* The Forest Service then reasoned that "the most striking distinction between the 1977 EIS bulk sample description and the 1980–83 exploration amendments is the tonnage to be removed from the project area." *Id.* at 3–4. Forty-two tons were to be shipped out under the 1980–83 plan and 5,000 tons were to be shipped out under the 1976 plan. The Forest Service concluded: "For this reason alone, approval of the 1980–83 exploration activities to remove 42 tons of spot sample could not be considered comparable to approval of a 5,000-ton bulk sample." *Id.*

C. *Reversal of the Forest Service Decision*

██ The Forest Service failed to base its decision on the law of the case. Additionally, the Remand Decision manifests a failure to consider all the relevant factors. Consequently, the Remand Decision must be reversed.

In *SEACC I*, the court pointed out the striking similarities between the activities authorized in the 1980–83 amendments and the U. S. Borax bulk sampling plans of 1976 and 1979. *SEACC I*, 526 F.Supp. at 209. When remanding the case to the Forest Service, the court ordered it to give further consideration, consistent with its memorandum, to whether the 1980–83 amendments constitute bulk sampling. In stark contrast to the court's order, the Remand Decision shows a failure to consider any of the factors which the court found relevant to a determination of whether the 1980–83 amendments constitute bulk sampling. Significantly, the Forest Service did not discuss the 1979 U. S. Borax bulk sampling proposal.[2] By ignoring the factors considered dispositive by the court in *SEACC I*, as to whether the 1980–83 amendments con-

stitute bulk sampling, the forest service ignored the law of the case; accordingly, the Remand Decision was contrary to law. *Cf. City of Cleveland, Ohio v. Federal Power Com'n*, 561 F.2d 344, 346 (D.C.Cir.1977) (decision of reviewing court establishes law of case and administrative agency is without power to act contrary to remand mandate).

Specifically, the court identified the following relevant factors in determining whether the 1980–83 amendments constitute bulk sampling: 1) the length and size of the tunnels; 2) the amount of blasting; 3) the total amount of rock excavated; and 4) the amount of on-site crushing and sampling activity. *SEACC I*, 526 F.Supp. at 209. Rather than addressing these relevant factors, the Forest Service concentrated on the tonnage of rock to be removed from the project area; a factor considered environmentally irrelevant by the court. See *SEACC I*, 526 F.Supp. at 208 n. 19. In the U. S. Borax 1979 bulk sampling plan, and the Forest Service's study of that plan, neither U. S. Borax nor the Forest Service mentioned the amount of rock to be ultimately removed from the mine site for outside testing. See 1979 Operating Plan, Quartz Hill Project at 3–4 (plaintiff's exhibit no. 8); Study Plan, U. S. Borax Bulk Sampling at 1 (plaintiff's exhibit no. 9). The implication is that both U. S. Borax and the Forest Service also realized that this factor is environmentally irrelevant.

Although the amount of rock to be removed from the mine site is a factor in determining whether bulk sampling is occurring, it is certainly not dispositive. Clearly, the Forest Service placed undue importance on this factor. This led to error in its Remand Decision.

III. ANILCA REQUIRES COURT TO MAKE BULK SAMPLING DETERMINATION

██ The general rule is that "[i]f the decision of the agency 'is not sustainable

---

**2.** The 1979 U. S. Borax bulk sampling proposal, *see* 1979 Operating Plan, Quartz Hill Project, (plaintiff's exhibit no. 8), expressly calls for bulk sampling. Further, the Study Plan, U. S. Borax Bulk Sampling (plaintiff's exhibit no. 9), prepared by the Forest Service, describes the 1979 bulk sampling plan and outlines steps that must be taken by the Forest Service before it can approve the plan. Hence, the 1979 U. S. Borax proposal, and Forest Service review of that proposal, provides further valid guidance to what constitutes bulk sampling.

... [it] must be vacated and the matter remanded ... for further consideration.'" *FPC v. Transcontinental Gas Pipe Line Corp.*, 423 U.S. 326, 331, 96 S.Ct. 579, 582, 46 L.Ed.2d 533 (1976) (per curiam). Nevertheless, the court may adjust its remedy to the exigencies of the particular situation. *Ford Motor Co. v. NLRB*, 305 U.S. 364, 373, 59 S.Ct. 301, 306, 83 L.Ed. 221 (1939); *Asarco, Inc. v. Occupational Safety & Health Ad.*, 647 F.2d 1, 2 (9th Cir. 1981) (amended decision) (per curiam). In this case ANILCA mandates, pursuant § 503(h)(5), expedited judicial review of any challenge of administrative action under § 503.[3] ANILCA requires the court to "render its final decision relative to any challenge within one hundred and twenty days after the date the response to such challenge is filed...." ANILCA § 503(h)(5).

The court's calculations show that over 200 days have elapsed from the first response to plaintiff's § 503 challenge and the issuance of this final determination.[4] Without addressing the technicalities of the 120 day final determination mandate (*i.e.* whether the time involved in the Forest Service's remand determination is an includable element in the 120 day time-frame) it is clear that too much time has elapsed between the initial challenge response and the Remand Decision. A second remand would certainly frustrate the dictate of § 503(h)(5). Accordingly, the court must adjust to the exigencies of this cause, *see Asarco*, 647 F.2d at 2, and determine whether the 1980–83 amendments involve bulk sampling.

## IV. A FULL EIS IS REQUIRED

■ As established by the court, "§ 503(h)(3) of ANILCA mandates an EIS prior to approval of bulk sampling."[5] *SEACC I*, 526 F.Supp. at 209. The two former bulk sampling proposals by U. S. Borax (1976 bulk sampling plan and 1979 bulk sampling plan) provide conclusive guidelines regarding what constitutes bulk

---

**3.** Section 503(h)(5) provides:

It is the intent of Congress that any judicial review of any administrative action pursuant to this section, including compliance with the National Environmental Policy Act of 1969, shall be expedited to the maximum extent possible. Any proceeding before a Federal court in which an administrative action pursuant to this section, including compliance with the National Environmental Policy Act of 1969, is challenged shall be assigned for hearing and completed at the earliest possible date, and shall be expedited in every way by such court, and such court shall render its final decision relative to any challenge within one hundred and twenty days after the date the response to such challenge is filed unless such court determines that a longer period of time is required to satisfy the requirements of the United States Constitution.

**4.** Federal defendants filed their first opposition on 3 September 1981, docket # 8, the court entered its remand decision on 13 November 1981, docket # 116, and this Federal Rule 54(b) judgment on the challenge will be filed on or about 2 April 1982.

**5.** The court must decline U. S. Borax's invitation to reconsider part three of *SEACC I*. The statutory language of § 503(h)(3) mandates the *SEACC I* holding. In short, Congress specifically required that all the relevant data and other information included in the 1977 EIS be included in the § 503(h)(3) EIS. In essence, Congress wanted an updated and expanded 1977 EIS. The two major actions addressed in the 1977 EIS were the access road for bulk sampling *and* the bulk sampling phase. Thus, by incorporating the 1977 EIS by reference in § 503(h)(3), Congress considered the bulk sampling phase to be a major federal action which must be addressed in the § 503(h)(3) EIS.

Moreover, the National Environmental Policy Act (NEPA) requires federal agencies to prepare an EIS for all "major Federal actions significantly affecting the quality of the human environment." 42 U.S.C. § 4332(2)(C). An EIS must be prepared whenever there are substantial questions raised regarding whether a project may cause significant environmental degradation. *See City & Cty. of San Francisco v. United States*, 615 F.2d 498, 500 (9th Cir. 1980). Failing to prepare an EIS "creates a risk that serious and avoidable environmental consequences of the action, which an EIS would reveal, will not be brought to the attention of agency decisionmakers." *City of Davis v. Coleman*, 521 F.2d 661, 670 (9th Cir. 1975).

The 1980–83 amendments involve the blasting of two 7' × 8' openings totalling 5,300 feet in length, as well as the use of heavy duty sampling and crushing equipment. All this is to take place within a national monument. This activity raises substantial questions on whether significant degradation to the human environment will occur—NEPA alone mandates an EIS in this situation.

sampling. From a comparison of the activities involved in these two former bulk sampling plans, with the activities involved in the 1980–83 amendments, the court concludes that the 1980–83 amendments constitute the same activity proposed in 1976 and in 1979.

The 1980–83 amendments require the identical amount and type of on-site activity which U. S. Borax stated was bulk sampling in its former proposals. The cumulative length and size of the tunnels are substantially the same. Thus, the amount of blasting and total amount of rock excavated would be substantially the same in all three proposals. Moreover, the on-site crushing and sampling activity appears to be the same under all three proposals. See *SEACC I*, 526 F.Supp. at 209. The court holds that the 1980–83 amendments constitute bulk sampling.

Accordingly, IT IS ORDERED:

1) THAT there is no just reason for delay, thus, the clerk shall enter judgment declaring:

(a) that the United States Forest Service shall prepare a full environmental impact statement pursuant to the National Environmental Policy Act which addresses the U. S. Borax 1980–83 amendments to the U. S. Borax 1980–83 Plan of Operations.

2) THAT the United States Forest Service is restrained and enjoined from authorizing the following mining activities to occur pursuant to the 1980–83 amendments to the 1980–83 U. S. Borax Plan of Operations:

(a) blasting within adits and on all quarries and trenches;

(b) operation of sampling plant and crusher; and

(c) operation of heavy equipment to the extent such equipment is involved in extracting, processing, or transporting material from adits.

3) THAT U. S. Borax is restrained and enjoined from engaging in any of the three above activities until further order of this court.

4) THAT the injunction of 8 March 1982, docket # 148, hereby is vacated.