**UNITED STATES of America,**

v.

**Carlos MIRANDA, a/k/a "Paciano",**
**Defendant.**

**No. 01 CR. 397(DLC).**

United States District Court,
S.D. New York.

June 21, 2001.

Anirundh Bansal, United States Attorney's Office, New York City, for Plaintiff.

Harold J. Pokel, New York City, for Defendant.

### OPINION and ORDER

COTE, District Judge.

■ Defendant Carlos Miranda ("Miranda") was indicted, on April 24, 2001, for the crimes of conspiracy to distribute cocaine and murder in connection with a narcotics conspiracy, in violation of 21 U.S.C. §§ 846 and 848(e)(1)(A). In light of

the fact that the maximum penalty for a conviction of 21 U.S.C. § 848(e)(1)(A) is death, and pursuant to 18 U.S.C. § 3005 and 21 U.S.C. § 848(q)(4), defendant's counsel, Harold J. Pokel ("Pokel"), has recommended an attorney for appointment as additional counsel to assist in Miranda's defense. It is unclear whether this proposed additional counsel qualifies as "learned" in the law applicable to capital cases.

■ A defendant indicted[1] for a capital crime is statutorily entitled, upon his or her request, to representation by two court-appointed attorneys,[2] "of whom at least 1 shall be *learned in the law applicable to capital cases,* and who shall have free access to the accused at all reasonable hours." 18 U.S.C. § 3005 (emphasis supplied). It is also required by statute that at least one attorney representing a defendant in a capital case "have been admitted to practice in the court in which the prosecution is to be tried for not less than five years, and must have had not less than three years experience in the actual trial of felony prosecutions in that court." 18 U.S.C. § 848(q)(5). Interpretations of the "learned in the law applicable to capital cases" phrase suggest, however, that at least in those cases in which the Government may actually intend to seek the death penalty, the additional attorney appointed to represent a defendant in a capital case should ordinarily have significantly more experience than that described in 18

---

1. Under the plain language of the statute, a defendant's entitlement to two attorneys under 18 U.S.C. § 3005 attaches when he or she is indicted for a capital crime, not when the Government decides to seek the death penalty. *See United States v. Boone,* 245 F.3d 352, 359–60 (4th Cir.2001). *But see United States v. Grimes,* 142 F.3d 1342, 1347 (11th Cir. 1998) ("a defendant is not entitled to benefits he would otherwise receive in a capital case if

the government announces that it will not seek the death penalty or the death penalty is otherwise unavailable by force of law").

2. A court may choose to appoint more than two attorneys in a capital case. 18 U.S.C. § 848(q)(4) (a defendant charged with a capital offense is entitled to *"one or more* attorneys") (emphasis supplied).

U.S.C. § 848(q)(5).[3]

The Spencer Committee—a subcommittee of the Defender Services Committee of the Judicial Conference formed to evaluate the expense of federal death penalty cases—published a report ("Spencer Report") describing "learned counsel" as counsel with

> distinguished prior experience in the trial, appeal, or post-conviction review of federal death penalty cases, or distinguished prior experience in *state* death penalty trials, appeals, or post-conviction review that, in combination with co-counsel, will assure high quality representation.

*Spencer Report* Recommendation 1(b) (emphasis in original).[4] The commentary accompanying this Recommendation emphasizes that

> the preparation of a death penalty case for trial requires knowledge, skills and abilities which are absent in even the most seasoned felony trial lawyers, if they lack capital experience. An attorney knowledgeable about the nature of capital pretrial litigation, the scope of a mitigation investigation and the impact of the sentencing process on the guilt phase is indispensable.

*Id.* David Bruck ("Bruck"), a criminal defense lawyer who serves as Federal Death Penalty Resource Counsel,[5] has described "learned in the law applicable to capital cases" to mean

more than a lawyer who has been to some seminars or a lawyer that is generally conversant with the law .... It means, according to the Spencer Committee, a lawyer, and this is the Committee's term, with "distinguished prior experience" in the trial and appellate representation of death penalty cases in federal or state court. And as a practical matter, since there have been so few federal cases, not only in the Second Circuit, but throughout the nation that have actually gone to trial, it means lawyers with distinguished prior experience in state death penalty cases.

Now, the implication of that for most of the Second Circuit it obvious. It means out of state counsel ....

Eventually there will, of course, be a cadre of experienced New York lawyers who have been around the block in death penalty litigation, but that's still a few years off. And the federal courts in New York and in Vermont, and to some degree in Connecticut, have appointed out-of-state counsel. Not always from terribly far away. There is a capital defense bar that is seasoned and available in New Jersey, right across the river, and that's where most of the "learned counsel" have been drawn from in New York State courts. There also have been appointments made from as far away as D.C. and Baltimore and other areas where an experienced death penalty bar can be found.

---

**3.** From January 1995 to July 2000, the United States Attorney for the Southern District of New York recommended the death penalty in twelve percent of the district's death eligible cases. *See United States v. Bin Laden,* 126 F.Supp.2d 256, 260 (S.D.N.Y.2000); *see also* United States Department of Justice, *The Federal Death Penalty System: A Statistical Survey* (1988–2000), available at:*www.us-doj.gov:80/dag/pubdoc/ _dp_survey_final.wpd.*

**4.** The Spencer Committee Report is available at www.uscourts.gov/dpenalty/4REPORT.htm.

**5.** Additional information about Federal Capital Defense Counsel and the Capital Defense Network, "a community of lawyers, a team of consulting experts, and an online Web resource dedicated to assisting counsel representing clients in federal capital proceedings," is available at: www.capdefnet.org.

Judicial Conference, *Second Judicial Circuit of the United States,* 196 F.R.D. 79 (1999), WL 196 FEDRDTP 79. According to the Spencer Report and Bruck's interpretation of its terms, counsel "learned in the law applicable to capital cases" must have actually participated in death penalty trials, appeals, or post-conviction review of death penalty cases in state or federal court.

The American Bar Association ("ABA") has published guidelines for the appointment and performance of counsel in death penalty cases which describes, in detail, the qualifications it recommends such counsel possess.

A. Lead trial counsel assignments should be distributed to attorneys who:

i. are members of the bar admitted to practice in the jurisdiction or admitted to practice *pro hac vice;* and

ii. are experienced and active trial practitioners with at least five years litigation experience in the field of criminal defense; and

iii. have prior experience as lead counsel in no fewer than nine jury trials of serious and complex cases which were tried to completion, as well as prior experience as lead counsel or co-counsel in at least one case in which the death penalty was sought. In addition, of the nine jury trials which were tried to completion, the attorney should have been lead counsel in at least three cases in which the charge was murder or aggravated murder; or alternatively, of the nine jury trials, at least one was a murder or aggravated murder trial and an additional five were felony jury trials; and

iv. are familiar with the practice and procedure of the criminal courts of the jurisdiction; and

v. are familiar with and experienced in the utilization of expert witnesses and evidence, including, but not limited to, psychiatric and forensic evidence; and

vi. have attended and successfully completed, within one year of their appointment, a training or educational program on criminal advocacy which focused on the trial of cases in which the death penalty is sought; and

vii. have demonstrated the necessary proficiency and commitment which exemplify the quality of representation appropriate to capital cases.

B. Trial co-counsel assignments should be distributed to attorneys who:

i. are members of the bar admitted to practice in the jurisdiction or admitted to practice *pro hac vice;* and

ii. who qualify as lead counsel under paragraph (A) of this Guideline or meet the following requirements:

a. are experienced and active trial practitioners with at least three years litigation experience in the field of criminal defense; and

b. have prior experience as lead counsel or co-counsel in no fewer than three jury trials of serious and complex cases which were tried to completion, at least two of which were trials in which the charge was murder or aggravated murder; or alternatively, of the three jury trials, at least one was a murder or aggravated murder trial and one was a felony jury trial; and

c. are familiar with the practice and procedure of the criminal courts of the jurisdiction; and

d. have completed within one year of their appointment at least one training or educational program on criminal advocacy which focused on the trial of cases in which the death penalty is sought; and

e. have demonstrated the necessary proficiency and commitment which exemplify the quality of representation appropriate to capital cases.

C. Alternate Procedures: Appointments for lead and co-counsel assignments may also be distributed to persons with extensive criminal trial experience or extensive civil litigation experience, if it is clearly demonstrated to the appointing authority that competent representation will be provided to the capitally charged indigent defendant. Lawyers appointed under this paragraph shall meet one or more of the following qualifications:

i. Experience in the trial of death penalty cases which does not meet the levels detailed in paragraphs A and B above;

ii. Specialized post-graduate training in the defense of persons accused of capital crimes;

iii. The availability of ongoing consultation support from experienced death penalty counsel.

Attorneys appointed under this paragraph should be prescreened by a panel of experienced death penalty attorneys ... to ensure they will provide competent representation.

ABA, *Guidelines for the Appointment and Performance of Counsel in Death Penalty Cases*, Guideline 5.1.[6] In short, in addition to familiarity with the jurisdiction and extensive criminal litigation training and experience, the ABA recommends that at least one attorney representing a defendant charged with a capital crime have previously "tried to completion" a capital case.

Finally, a court assigning counsel for a defendant charged with a capital offense should consider the recommendation of the federal public defender. 18 U.S.C. § 3005. The *Guide to Judiciary Policies and Procedures* recommends that, "[i]n fulfilling this responsibility, the federal public defender ... should consult with counsel (if counsel has already been appointed or retained) and the court regarding the facts and circumstances of the case to determine the qualifications which may be required to provide effective representation." 6 *Guide to Judiciary Policies and Procedures*, Ch. 6.01(A)(1). The *Guide to Judiciary Policies and Procedures* additionally provides that,

[i]n evaluating the qualifications of counsel considered for appointment, the federal public defender organization ... should consider:

(1) the minimum experience standards set forth in 21 U.S.C. § 848(q), 18 U.S.C. § 3005, and other applicable laws or rules;

(2) the qualification standards endorsed by bar associations and other legal organizations regarding the quality of legal representation in capital cases;

(3) the recommendations of other federal public defender and community defender organizations, and local and national criminal defense organizations;

(4) the proposed counsel's commitment to the defense of capital cases; and

---

**6.** These requirements are comparable to those required of lead counsel and associate counsel in capital cases in New York State pursuant to Section 35–b of the Judiciary Law, available at www.nycdo.org/35b/35b-std.html.

(5) the availability and willingness of proposed counsel to accept the appointment and to represent actively the interests of the client.

*Id.* at ch. 6.01(B). The court may also consult with Federal Death Penalty Resource Counsel, such as Bruck and Kevin McNally,[7] in order to identify qualified counsel. *See* Federal Judicial Center, *Resource Guide for Managing Capital Cases* at 7 (2001).

In light of the above-described requirements and recommendations regarding the appointment of additional counsel in this case, it is hereby

ORDERED that a conference is scheduled for Thursday, June 28, 2001 at 10:00 a.m. at 500 Pearl Street, New York, New York, Courtroom 11B, to consider defense counsel's application for the appointment of additional counsel "learned in the law applicable to capital cases."

SO ORDERED.

---

7. Kevin McNally assisted this Court in identi- fying materials relevant to this Opinion.