# United States Court of Appeals
## For the First Circuit

No. 02-1907

IN RE QUESTER STERLING-SUÁREZ,

Petitioner,

ON MOTION TO ENFORCE MANDAMUS
TO THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Juan M. Pérez-Giménez, [U.S. District Judge]

Before

Boudin, Chief Judge,

Torruella and Lipez, Circuit Judges.

Joseph C. Laws, Jr., Federal Public Defender, for petitioner.

March 4, 2003

**BOUDIN, Chief Judge**.  In April 2002, Quester Sterling-Suarez was indicted for federal crimes stemming from his alleged involvement in an armed car robbery in which one of the guards was killed.  One of the charges permits the death penalty.  See 18 U.S.C. § 924(j) (2000).  He asked that "learned counsel" be appointed pursuant to 18 U.S.C. § 3005 (2000); the statute specifies that two counsel, one of whom "shall be learned in the law applicable to capital cases," must at the defendant's request be appointed "promptly."  The district court declined the request, ruling that appointment of learned counsel should await a determination by the Attorney General as to whether to seek the death penalty.

Sterling-Suarez sought mandamus from this court to compel an immediate appointment of learned counsel.  This panel determined that the question of whether such appointments may be deferred presented an issue of continuing importance justifying advisory mandamus.  On the merits, we concluded that statutory language supported petitioner's reading, noting that learned counsel could be useful in seeking to dissuade the Attorney General from seeking the death penalty.  Accordingly, we granted the writ, ordering that "[l]earned counsel shall be appointed forthwith." In re Sterling-Suarez, 306 F.3d 1170, 1175 (1st Cir. 2002).

Following the grant of the writ, the district court appointed "as learned counsel" Joseph Laws, the Federal Public

Defender for the District of Puerto Rico, as well as a second lawyer as co-counsel. This followed a determination by the district judge that Laws personally would qualify as learned counsel because, other qualifications aside, he had recently served as co-counsel in a death penalty case, albeit one that ended without a trial. Throughout, Laws has maintained that no one in his office had the necessary qualifications and, in addition, that this appointment would unduly strain the limited resources of his heavily-burdened office.[1]

Following his appointment, Laws filed a "motion to enforce mandamus" which is now before us. In this document, Laws argues that he does not qualify as "learned in the law applicable to capital cases" under the statute and that his prior experience as co-counsel in an untried capital case does not meet the requirement of the "prior experience . . . as defense counsel in a capital case" prescribed by a local rule of the district court. P.R. Local R. 482(4). Laws urges that the district court's designation of Laws as learned counsel is merely "ostensibl[e]," and that a further order should be issued "to enforce" the earlier writ.

---

[1]Prior to the writ, Laws' office had been appointed as counsel for petitioner without a judicial determination that anyone in the office qualified as learned counsel; as the district court then read the statute no such determination was required.

What is perfectly clear is that the writ of mandamus previously issued by this court was concerned, simply and solely, with _when_ learned counsel had to be appointed under the "promptly" language of the statute. True, our order said that learned counsel should be appointed forthwith, but an order is properly read in relation to the decision that supports it; and "[t]he reach of the mandate is generally limited to matters actually decided." 18B Wright, Miller & Cooper, _Federal Courts_ § 4478.3 (2002). Questions as to who qualifies as learned counsel were not resolved in the proceeding leading up to the writ, and their resolution by the district court cannot violate our prior order.[2]

Whether Laws does qualify as learned counsel may well be open to debate. But unlike the meaning of the "promptly" requirement, the question as to the qualifications required of learned counsel is less than clear-cut and the question whether an individual lawyer qualifies as learned counsel may depend on circumstances that vary markedly from case to case. The lack of a clear answer, and the likelihood that no simple rule will dictate answers in other cases, make this a less obvious case for mandamus. _In re Cargill_, 66 F.3d 1256, 1259-60 (1st Cir. 1995); _United States v. Horn_, 29 F.3d 754, 769-770 (1st Cir. 1994).

---

[2]_See, e.g._, _Biggins_ v. _Hazen Paper Co._, 111 F.3d 205, 209 (1st Cir.), _cert. denied_, 522 U.S. 952 (1997); _Jones_ v. _Lewis_, 957 F.2d 260, 262-63 (6th Cir.), _cert. denied_, 506 U.S. 841 (1992); _United States_ v. _Tenzer_, 213 F.3d 34, 41-44 (2d Cir. 2000).

Nothing in this decision prevents the filing of a new mandamus petition to challenge Laws' designation as learned counsel. But such a petition would have to begin with a showing that this issue meets the ordinary qualifications for resolution by mandamus. Certainly death penalty cases are different, but Congress has not provided for automatic interlocutory appeals in disputes as to the appointment of counsel.

Accordingly, the motion to enforce mandamus is dismissed without prejudice to the filing, if petitioner is so inclined, of a mandamus petition seeking to present the question of whether Laws is qualified as learned counsel.

It is so ordered.

**(Dissent follows.)**

**TORRUELLA**, <u>Circuit Judge</u>, **dissenting.** Today the panel declines to enforce its mandamus ordering district court Judge Pérez-Giménez to appoint "learned counsel" pursuant to 18 U.S.C. § 3005 in the capital case of Quester Sterling-Suárez. The majority concludes that the district court did not violate our mandate, and, that even if the court's appointment of Joseph Laws was erroneous, this case is nevertheless inappropriate for mandamus. I respectfully disagree. The district court is simply not in compliance with our mandate of October 22, 2002. Therefore, mandamus is the proper tool to ensure compliance with our mandate.

The majority explains its hesitation to enforce its order in part by stating that the issue raised by the petition, namely, whether Joseph Laws can qualify as "learned counsel," is "less than clear-cut," and concludes that because the instant petition (unlike our original mandamus) affords no obvious answer, "this is a less obvious case for mandamus." <u>Maj. Op.</u> at 4. The majority then cites two cases, <u>In re Cargill</u>, 66 F.3d 1256, 1259-60 (1st Cir. 1995), and <u>United States</u> v. <u>Horn</u>, 29 F.3d 754, 769-70 (1st Cir. 1994), which set a very high bar for issuance of the writ. <u>Id.</u>

It is axiomatic that the remedy of mandamus is a drastic one and should be invoked only under extraordinary circumstances. <u>Kerr</u> v. <u>United States District Court</u>, 426 U.S. 394, 402 (1976). That said, we issued our original mandate due the extraordinary

-6-

circumstances of a district court's refusal to give timely effect to a capital defendant's unambiguous statutory right to "learned counsel." Although I respect the majority's desire to avoid issuing the writ lightly, I disagree with the burden the majority places on the instant petition.

The relevant question is not whether the petition presents "a clear answer," or whether the issue raised in the instant petition would be better raised in a new mandamus petition; rather the sole question is whether the district court is in compliance with our original mandate.

"One of the less controversial functions of mandamus is to assure that a lower court complies with the spirit, as well as the letter of the mandate issued to that court by a higher court." In re Continental Securities Litigation, 985 F.2d 867, 869 (7th Cir. 1992); see also 18B Wright, Miller & Cooper, Federal Practice and Procedure § 4478.3 (2d ed. 2002) ("Enforcement [of a mandate] also may be accomplished by mandamus, and indeed this is one of the most nearly routine uses of this 'extraordinary writ.'"). Indeed, where a district court fails to comply with an order of a federal appellate court, the need for mandamus becomes more urgent and a court's reluctance to issue the writ is proportionally diminished. See Citibank, N.A. v. Fullam, 580 F.2d 82, 86-87 (1978) ("[Courts] have uniformly granted such writs in one situation where the district court has failed to adhere to an order of the court of

appeals."). With respect, we need not consider whether the instant petition satisfies the requirements for mandamus articulated in cases such as Cargill and Horn, because those cases do not address the issue of mandamus in the context of compelling a lower court to comply with an appellate court's mandate. Because of the district court's failure to adhere to our mandate, the standard for mandamus here is far less onerous: if the district court has not heeded our mandate, the writ should issue.

The question then is whether the appointment of Joseph Laws -- an attorney who has never actually tried a capital case -- complies with our mandate that "learned counsel" be appointed forthwith.

The first time this case came before us, we issued a writ ordering Judge Pérez-Giménez to comply with the terms of 18 U.S.C. § 3005 because of a concern that the judge had adopted a policy of delaying the appointment of "learned counsel" until the Department of Justice notifies the court of its intent to seek the death penalty. In re Sterling-Suárez, 306 F.3d 1170 (1st Cir. 2002); see also United States v. Torres Gómez, 62 F.Supp.2d 402 (D.P.R. 1999) (Pérez-Giménez, J.)(delaying appointment of "learned counsel" and expressing frustration with expenses related to the appointment of "learned counsel"). Our mandate was simple: "Learned counsel shall be appointed forthwith." In re Sterling-Suárez, 306 F.3d at 1175. Although the district court's actions compelled us to explicitly

construe the term "promptly," our failure to precisely spell out the meaning of each word of our six-word mandate does not mean that those words did not constitute "matters actually decided." Maj. Op. at 4. The term "learned" was not inserted idly, or for rhetorical effect. When this court ordered the appointment of "learned" counsel, I thought it meant what it said; that is, our mandate meant that the defendant had an immediate right of access to second counsel, and that at least one of his two attorneys should be skilled in the law applicable to death penalty cases.

Even if our mandate simply ordered the immediate appointment of "learned counsel" without pausing to define the term "learned," by consulting our opinion it should have been evident to the district court that we understood the term "learned" to mean "skilled or practiced in the law applicable to capital cases." The issue was undoubtedly before the Court: briefs by the petitioner and amicus curiae stressed the level of expertise that "learned counsel" could be expected to bring to Sterling-Suárez's defense, and repeatedly emphasized that because there has never been a capital case tried to completion in this district, "learned counsel" with actual death penalty experience would need to be imported.[3] Far more important is the fact that the text of our

_____

[3]Moreover, this Court was aware that the District of Puerto Rico has generated more than its fair share of 18 U.S.C. § 3005 litigation, see In re Sterling-Suárez 306 F.3d at 1172-73, and that because of the district's inexperience trying capital cases, appointing "learned counsel" can be a difficult and lengthy

-9-

opinion clearly indicates that we considered the issue of what qualifies as "learnedness" under section 3005. See United States v. Cote, 51 F.3d 178, 182 (9th Cir. 1995) ("[T]he opinion delivered by [the] court at the time of rendering its decree may be consulted to ascertain what was intended by its mandate." (quoting In re Salford Fork & Tool Co., 160 U.S. 247, 256 (1895)).

First, our opinion made several references to our high expectations of "learned counsel." We noted that the purpose of § 3005 was that "learned counsel's" "special learning in the law 'applicable to capital cases' is likely to be especially useful in making and supporting arguments about mitigating and aggravating factors. . . made . . . when the jury is determining the sentence." In re Sterling-Suárez, 306 F.3d at 1173 (emphasis added). We noted that capital litigation was in many ways sui generis and listed by name several federal death penalty statutes about which counsel should be "learned." Specifically, we stated that "learned counsel" should be familiar with the complex death penalty procedure required by 18 U.S.C. § 3591 (2000). Additionally, we twice noted that learned counsel would provide expertise regarding issues involving mitigating and aggravating factors under 18 U.S.C. § 3592 (2000), issues which would likely be missed by otherwise

---

process. "Federal defendants in Puerto Rico facing a possible death sentence must always look to the mainland for qualified legal assistance." United States v. Colón-Miranda, 985 F.Supp. 36 (D.P.R. 1997) (Fusté, J.).

competent attorneys who lacked experience in death penalty cases. Id.

Second, a necessary implication of our opinion is that "learned" signifies a substantial amount of experience in capital litigation. We stated that the term "promptly" could not be defined except as it refers to the event which was to promptly occur, namely, appointment of an attorney with experience in capital cases. As we stated: "the term 'promptly' is not self-defining; if there were no purpose served by appointing learned counsel . . . one could argue that the appointment should be made promptly when it mattered and not before." Id. at 1173 (emphasis added). That statement is an explicit finding that in order to define the term "promptly" it was necessary to recognize the statutory purpose for requiring the appointment of "learned counsel." Since the purpose served by appointing "learned counsel" is to provide capital defendants in federal court with an attorney experienced in death penalty law, the statute's purpose was undeniably a matter "actually decided" by this court. See Eichmann v. Fotomat Corp., 880 F.2d 149, 157 (9th Cir. 1989) (noting that the mandate doctrine "encompasses a court's explicit decisions as well as those issues decided by necessary implication").

Now, the petitioner challenges that the district court's actions contradict the purpose of 18 U.S.C. § 3005. If the issues of timing and purpose were so intertwined at the time of our

-11-

opinion that neither in its own right was "self defining," I fail to understand the majority's present contention that we never considered this issue. In addition to our express acknowledgment that the timing question in § 3005 was inseparably linked to the statute's purpose, the quotations cited above provide ample evidence that the purpose of appointing "learned counsel" was an issue we "actually decided." Id.

Finally, to construe "learned in the law applicable to capital cases" in a manner that does not entail actual experience in a capital trial or appeal divests the terms "learned" and "applicable to capital cases" of any tangible meaning. Such an interpretation could not possibly have been our intent. Congress plainly had more than this in mind when it amended § 3005 to require counsel to be learned in the law "applicable to capital cases."[4] Its insertion of the phrase "applicable to capital cases" (referenced in our opinion) was manifestly intended to require that "learned counsel" have expertise relevant to capital litigation, and not merely to the practice of criminal law generally. See United States v. McCulluah, 76 F.3d 1087, 1098 (10th Cir. 1996) (finding that the amendment to § 3005 "did not merely 'clarify' the law but rather substantively changed it, creating a new requirement

---

[4]In 1994, Congress amended 18 U.S.C. § 3005 by, inter alia, substituting the phrase "learned in the law applicable to capital cases," for the less stringent "learned in the law." 18 U.S.C. § 3005, amended by Pub. L. No. 103-322 § 60026 (1994).

-12-

which previously had not existed").  At a minimum, "learned counsel" should possess "distinguished prior experience in the trial, appeal, or post-conviction review of federal death penalty cases."  United States v. Miranda, 148 F.Supp.2d 292, 294 (S.D.N.Y. 2001) (quotation omitted).[5]

In the instant petition, the appointed "learned counsel," Joseph Laws, argues that because he has no experience trying capital cases, he cannot qualify as "learned counsel" under the

_____

[5]If, despite these passages from our opinion, I am wrong and the issue of "learned counsel's" qualifications "was not resolved in the proceeding leading up to the writ," Maj. Op. at 4, it does not necessarily follow that this Court is powerless to address the district court's failure to adhere to our mandate at this stage. As several Circuits have found, courts of appeals have "the power to issue a writ of mandamus that would resolve [controversy in the lower court] by clarifying its previous mandate." American Trucking Ass'ns v. ICC, 669 F.2d 957, 960 (5th Cir. 1982) (quoting City of Cleveland v. FPC, 561 F.2d 344, 346-47 (D.C. Cir. 1977)).  Such a clarifying approach "may appropriately be utilized to correct a misconception of the scope and effect of the appellate decision." Id.

Indeed, clarifying our mandate so as to determine that Joseph Laws does not qualify as "learned counsel" at this stage is preferable to the possibility of reviewing this case on appeal after a final decision has been rendered.  The burden placed on the defendant of showing post hoc that he was prejudiced by the appointment of one attorney over another will, I fear, create extraordinarily complicated legal problems for a reviewing court. Such concerns have led the Fourth Circuit to adopt a rule that failure to comply with § 3005 violation "gives rise to an irrebutable presumption of prejudice." United States v. Williams, 544 F.2d 1215, 1218 (4th Cir. 1976) (quoting United States v. Watson, 496 F.2d 1125, 1129-30 (4th Cir. 1973)); see also, United States v. Boone, 245 F.3d 352, 360-61 n.8, 364 (4th Cir. 2001) (vacating defendant's conviction despite potential harmlessness of the § 3005 violation because, in the court's view, 18 U.S.C. § 3005 "would be eviscerated by application of the harmless error doctrine [and the court] perceive[d] no alternative but to enforce it").

-13-

statute.  Further, Laws avers that by circumventing the purpose of our mandamus, namely, the timely appointment of counsel with death penalty experience, the district judge has not complied with our order that "learned counsel shall be appointed forthwith."  In re Quester Sterling-Suárez, 306 F.3d at 1175.

I agree.  Although the district court has purported to comply with our order by indeed appointing counsel "forthwith," Joseph Laws is not "learned" under any sound interpretation of our order, of section 3005, or of any other relevant "learned counsel" provision.  The unique skills identified in our opinion are not the kind one might gain in the ordinary practice of federal criminal defense.  As an American Bar Association study explained, the complex death penalty procedures articulated by § 3591, et seq., require that counsel "be knowledgeable about a complex body of constitutional law and unusual procedures that do not apply in other criminal cases." American Bar Association, Toward a More Just and Effective System of Review in State Death Penalty Cases, 40 Am. U. L. Rev. 1, 63 (1990).  Such complexities are often missed by lawyers lacking considerable experience litigating capital cases.  As a report from the Judicial Conference of the United States noted, even "seasoned federal criminal lawyers who lacked death penalty experience miss[] important issues."  Subcommittee on Federal Death Penalty Cases, Committee on Defender Services, Judicial Conference of the United States, Federal Death Penalty

<u>Cases: Recommendations Concerning the Cost and Quality of Defense</u>
<u>Representation</u>, at I.C.1.(May 1998) [hereinafter "Spencer Report"].

In sum, the multiple committees which have looked at this issue have concluded that "learned counsel" "should have <u>distinguished prior experience</u> in the trial, appeal, or post conviction review of federal death penalty cases." <u>Guide to Judiciary Policies and Procedures</u>, Vol. VII Ch. VI, § 6.01 B (emphasis added); <u>Spencer Report</u> at II.1. Because neither Laws nor anyone in his office has ever tried a death penalty case to completion, there is no basis for deviating from these recommendations in this case.

Laws' motion is not a new petition, and it does not raise a new issue; we are asked only to enforce our own order regarding actions by the judge to whom the order was directed. We are in a position to decide this matter because we can accept the facts stated in the district court's opinion as true, and all that remains is an issue of law, namely, whether Joseph Laws can qualify as "learned counsel." Although I believe that Laws is a skilled and accomplished Federal Public Defender, his current experience does not permit him to qualify as "learned counsel" in this or any other capital case. Therefore, I conclude that despite his appointment, the district court is not in compliance with our mandate.

It is both appropriate and routine for a court of appeals to issue mandamus where a district court "fails to comply with the spirit as well as the letter of the mandate issued . . . by a higher court." Continental Illinois, 985 F.2 at 869. Where our orders are issued to protect the rights of a defendant in a capital trial, we should be especially vigilant in seeing that they are followed. I respectfully dissent.