**AMERICAN TRUCKING ASSOCIATIONS, INC., et al., Petitioners,**

v.

**INTERSTATE COMMERCE COMMISSION and The United States of America, Respondents.**

No. 81–4026.

United States Court of Appeals, Fifth Circuit.

Feb. 25, 1982.

See also, 5th Cir.,659 F.2d 452.

William French Smith, Atty. Gen., U. S. Dept. of Justice, Robert J. Grady, I.C.C., Gen. Counsel, Kenneth P. Kolson, App. Sec., Robert B. Nicholson, Antitrust Div., Dept. of Justice, Washington, D. C., for respondents.

Serby & Mitchell, P. C., Alan E. Serby, Atlanta, Ga., for Brannan, Owen, Refrigerated.

Brooks & Matthews, Hugh T. Matthews, Dallas, Tex., for Steere.

Perry, Crockett, Morrisson & Starling, Donald B. Morrison, Jackson, Miss., for Merchants.

Alan J. Thiemann, Gen. Counsel, William H. Shawn, Sp. Counsel, Washington, D. C., for American and Red Arrow and Merchants Truck & Steere.

Robinson, Felts, Starnes & Latting, P. C., Phillip Robinson, Austin, Tex., for Central, Great Western, Miller and Saia.

Phinney, Hallman, Pulley & Coke, Leroy Hallman, Dallas, Tex., for Frozen, Southwestern.

Alan F. Wohlstetter, Stanley I. Goldman, Washington, D. C., for Aero Mayflower, et al.

Thomas E. James, Dallas, Tex., James M. Doherty, Austin, Tex., for Rose Truck Line, et al.

Bruce E. Mitchell, Alan Serby, Atlanta, Ga., for Motor Carrier Lawyers Assoc.

Eugene C. Ewald, Bloomfield Hills, Mich., for Nat. Auto. Transporters.

Keith G. O'Brien, Edward K. Wheeler, Washington, D. C., for Intern. Broth. of Teamsters, Chauffeurs, Warehousemen and Helpers of America.

Dennis Dean Kirk, Washington, D. C., for Specialized Carriers.

Before RUBIN, RANDALL and TATE, Circuit Judges.

PER CURIAM:

In a prior opinion,[1] we dealt with trade association challenges to rules and a policy statement adopted by the Interstate Commerce Commission in response to the enactment of the Motor Carrier Act of 1980, Pub.L.No.96–296, 94 Stat. 793 (1980). We held that the rules, guidelines, and policy statements dealing with new applications for operating authority and applications for removal of restrictions from existing operating authorities were all, in reality, binding rules, and that some of these rules were within the ICC's discretion while others transgressed its statutory mandate. We re-manded to the Commission to permit it to enact rules within the statutory bounds of the Motor Carrier Act.

## I.

On January 6, 1982, the American Trucking Associations and other petitioners and intervenors[2] filed a petition asserting that the ICC "has repeatedly violated both the express and necessarily implied holdings of this court" and seeking to compel compliance with our mandate.[3] On January 11, 1982, the Household Goods Carrier Intervenors[4] filed a Supplemental Petition, likewise seeking enforcement of our mandate. To accomplish this, the petitions, as clarified by later briefs, request that we issue an order:

Moss Trucking Co., Inc., Specialized Carriers and Rigging Association, and National Automobile Transporters Association. Another group of intervenors was the Brannan Systems group composed of Brannan Systems, Inc., Owen Motor Freight Lines, Inc., and Refrigeration Transport Co., Inc. Joining the Brannan System group's brief as an intervenor was the Motor Carrier Lawyer's Association. The International Brotherhood of Teamsters, Chauffeurs, Warehousemen, and Helpers of America, filed a separate brief as intervenors. The Households Goods intervenors including Aero Mayflower Transit Co., Inc., Allied Van Lines, Inc., Global Van Lines, Inc., Imperial Van Lines, Inc., and Wheaton Van Lines, Inc. filed a joint brief. A separate brief was filed by the American Movers Conference, Inc.

3. Our mandate read:

These causes came on to be heard on the petitions of American Trucking Associations, Inc., et al., for review of orders of the Interstate Commerce Commission, and were argued by counsel;
ON CONSIDERATION WHEREOF, It is now ordered and adjudged by this Court that these petitions for review of orders of the Interstate Commerce Commission in these causes be and the same are hereby remanded for further proceedings in accordance with the opinion of this Court.

4. This group includes Aero Mayflower Transit Co., Inc., Allied Van Lines, Inc., Global Van Lines, Inc., Imperial Van Lines, Inc., Wheaton Van Lines, Inc., and the American Movers Conference. The American Movers Conference was later allowed to withdraw as an intervenor.

---

1. *American Trucking Ass'ns v. ICC*, 659 F.2d 452 (5th Cir. 1981). The opinion was published on October 1, 1981. After several extensions of time to the ICC within which to seek a rehearing, the mandate was issued on November 13. The time for filing an application for rehearing before the Fifth Circuit or an application for certiorari with the United States Supreme Court has expired.

2. This group includes: Brannan Systems, Inc., Central Freight Lines, Inc., Frozen Food Express, Inc., Great Western Trucking Co., Inc., Merchants Truck Lines, Inc., Miller Truck Lines, Inc., Owen Motor Freight Lines, Inc., Red Arrow Freight Lines, Inc., Refrigerated Transport Co., Inc., Saia Motor Freight Lines, Inc., Southwestern Motor Transport, Inc., J. H. Rose Truck Lines, Inc., C&H Transportation, Inc., Moss Trucking Co., Inc., Specialized Carriers and Rigging Association, National Automobile Transporters Association, International Brotherhood of Teamsters, Chauffeurs, Warehousemen, and Helpers of America, and the Motor Carrier Lawyer's Association.
This group is made up of petitioner and intervenors in the original proceeding. As we identified the parties in our opinion awarding costs, *American Trucking Ass'ns v. I.C.C.*, 666 F.2d 167 (5th Cir. 1982), the American Trucking Associations petitioner group included American Trucking Associations, Inc., Central Freight Lines, Inc., Frozen Food Express, Inc., Great Western Trucking Co., Inc., Merchants Truck Lines, Inc., Miller Truck Lines, Inc., Owen Motor Freight Lines, Inc., Red Arrow Freight Lines, Inc., Saia Motor Freight Lines, Inc., Southwestern Motor Transport, Inc., J. H. Rose Truck Lines, Inc., and Steere Tank Lines, Inc. Joining the American Trucking Associations' brief as intervenors were J. H. Rose Truck Lines, Inc., C&H Transportation, Inc.,

1. Compelling the ICC to comply in all pending actions before it with the "full scope of this Court's opinion;"

2. Requiring the ICC to review all administratively final decisions issued since October 1, 1981, and, after hearings contradictorily with the certificate and permit holders, to vacate all decisions that grant certificates or issue permits in violation of the mandate; and

3. Compelling the ICC, if it adopts any replacement rules of an interim nature, to submit those rules to the Court for its approval within 10 days after petitioners have had the opportunity to respond and further compelling the ICC to publish these approved rules in the *Federal Register*.

■ The ICC has not proposed any new rules. In support of their position, petitioners have called our attention to ICC decisions indicating that the ICC has not complied with our prior opinion in acting on some individual applications for new operating authority or on some applications for removal of restrictions from existing operating authorities. In this opinion, we do not attempt to evaluate the ultimate correctness of these representations, which are relevant only to parts 2 and 3 of the order sought, and we of course intimate no opinion concerning the validity of any certificate or permit issued or revised before the date of this opinion. We consider only the issues concerning the ICC's future action, raised in part 1 of the order sought. Although the Department of Justice concedes that we have power to clarify the scope of our mandate, the ICC disputes our authority to do so. Accordingly, we turn first to that question.

*City of Cleveland v. FPC*, 561 F.2d 344 (D.C.Cir.1977), was the sequel to an earlier opinion by the District of Columbia Circuit. The court's original "mandate directed further proceedings by the Commission." *Id.* at 345 (footnote omitted). Thereafter a controversy "rage[d] over the scope of the investigation that the Commission is thus obliged to make." *Id.* The court held that it had the power to issue a writ of mandamus that would resolve this controversy by clarifying its previous mandate, saying:

The decision of a federal appellate court establishes the law binding further action in the litigation by another subject to its authority. The latter "is without power to do anything which is contrary to either the letter or spirit of the mandate construed in the light of the opinion of [the] court deciding the case," and the higher tribunal is amply armed to rectify any deviation through the process of mandamus. "That approach," we have said, "may appropriately be utilized to correct a misconception of the scope and effect of the appellate decision." These principles, so familiar in operation within the hierarchy of judicial benches, indulge no exception for reviews of administrative agencies. Our mission thus becomes definition of the exploratory obligation which our mandate laid upon the Commission, and for guidance we refer to our previous opinion.

*Id.* at 346–47 (footnotes omitted). *See also Oswald v. McGarr*, 620 F.2d 1190, 1196 (7th Cir. 1980) ("Mandamus is appropriate to review compliance with discretionary standards and nondiscretionary commands set forth in an earlier opinion concerning the parties."); *Weiser v. White*, 505 F.2d 912, 915 (5th Cir. 1975) (it is a "settled principle that a mistake in construction of a mandate should ordinarily be corrected by the court which issued the mandate"), *cert. denied*, 421 U.S. 993, 95 S.Ct. 1998, 44 L.Ed.2d 482 (1975); *Greater Boston Television Corp. v. FCC*, 463 F.2d 268, 278 (D.C.Cir.1971) ("an appellate court likewise has continuing power to accept and pass upon a petition to clarify an outstanding mandate"), *cert. denied*, 406 U.S. 950, 92 S.Ct. 2042, 32 L.Ed.2d 338 (1972). Indeed, the ICC concedes that mandamus is the appropriate remedy to enforce the judgment of an appellate court, itself correctly citing, *inter alia, Will v. United States*, 389 U.S. 90, 95, 88 S.Ct. 269, 273, 19 L.Ed.2d 305, 310 (1967), and the cases cited *supra.* It contests only the adequacy of the showing made to warrant issuance of the writ.

Since October 1, the ICC asserts, it has issued 5000 permits or certificates and it is impossible to determine which of these might be affected by the ruling without examining the record in each proceeding. The American Trucking Associations petition and that of the Household Goods Carriers cite numerous examples of certificates that do not appear to comply with our ruling. The Household Goods Carriers alone cite sixty-two cases where the Commission issued household goods certificates that appear to violate the ruling. If, indeed, the ICC is not complying with our prior opinion, it is creating the potential for massive future litigation. The volume of matters the ICC is handling is so great that applicants, opponents, and the public, as well as the Commission, should know with certainty the terms of our opinion and enforcing mandate. Absent action by the ICC to effectuate those parts of our opinion requiring changes in its published rules, it is difficult for interested persons or the public to know the procedures in effect and, particularly, the invalidity of those announced guidelines that have been declared invalid.

Three months after the rendition of our prior opinion, the ICC has not fully complied with it. Yet it is apparently continuing to act in many cases without applying the principles that are exacted by the Motor Carrier Act, as interpreted in our prior opinion. Litigation in scores of cases is not adequate remedy for an agency's failure to carry out its statutory duties. Therefore, there is no adequate alternative remedy. *Allied Chemical Corp. v. Daiflon*, 449 U.S. 33, 101 S.Ct. 188, 190, 66 L.Ed.2d 193 (1980). Because the ICC has promulgated rules never rescinded, it has obviously chosen not to interpret the requirements of the Motor Carrier Act on a case by case basis. Indeed, the ICC anomalously invites us to review and comment on an unpublished interim procedures memorandum issued by it for the professed internal guidance of its staff, and to render an opinion that it suggests would be "advisory" concerning whether the procedures there outlined would lead to "unlawful decisions." Our jurisdiction is, however, limited to cases and controversies, Art. III, § 2, United States Constitution, and we clearly lack jurisdiction to advise the ICC. *Hayburn's Case*, 2 Dall. (2 U.S.) 408, 1 L.Ed. 436 (1792).

Adopting the position taken in *City of Cleveland v. FPC, supra*, we hold that we have jurisdiction to enforce our prior mandate. Having the power, we also have the duty to clarify the mandate and to direct future compliance with it by mandamus. Accordingly, we issue a writ of mandamus to accomplish those ends. After further study, we will issue an opinion dealing with the other issues, summarized in parts 2 and 3 of the recital of the relief sought by petitioners. See page 960, *supra*.

## II.

### A. RESTRICTION REMOVAL

First, we deal with the effect of our opinion on the Restriction Removal Statement, "Removal of Restrictions From Authorities of Motor Carriers of Property," Ex Parte No. MC–142 (Sub—No. 1), 45 Fed. Reg. 86,747 (effective Dec. 28, 1980). The Restriction Removal Statement is based on Section 6 of the Motor Carrier Act, 49 U.S. C.A. § 10922(h)(1) (West Supp. 1981). The following mandate applies to every proceeding pending on the effective date of this opinion and to every proceeding commenced hereafter:

1. In order that persons affected by the ICC's rules and the general public may be properly informed, the ICC is required to announce that those parts of the guidelines not declared invalid are rules and to publish them as such. We held, "[t]he Motor Carrier Act requires the Commission to establish a procedure, on application of individual motor carriers, 'to *reasonably* broaden the categories of property authorized.' 49 U.S. C.A. § 10922(h)(1) (emphasis supplied)." 659 F.2d at 461. "What the Commission considers a 'reasonable' broadening of commodities descriptions is described in the second part of the Restriction Removal Statement labeled 'Guidelines.'" *Id.* at 462 (footnote omitted). These "Guidelines" may be found at 45 Fed.Reg. 86,759 (1980).

The guidelines "are not guidelines but normative rules, and must be evaluated as such." 659 F.2d at 464 (footnotes omitted).

Those parts of the "guidelines" mentioned below have been declared invalid as exceeding the statutory language of the Motor Carrier Act. The provisions replacing them in compliance with this mandate shall be incorporated into the published rules by a procedure complying with the Administrative Procedure Act ("APA"), 5 U.S.C. § 500, et seq.

2. In every proceeding to "broaden the categories of property authorized" by existing certificates (49 U.S.C.A. § 10922(h)(1)), the Commission shall follow our earlier opinion:

> The carrier must be permitted, both by the Commission's express statement and actual agency practice, to seek some other commodity classification if it can show that use of the tripartite Commission standard would require the transportation of commodities unrelated to those previously authorized or would require the institution of a different type of service, and that the carrier is not fit or is unwilling or is unable to provide the service.

659 F.2d at 464–65.[5]

While the manner in which the Commission announces its compliance with this part of our mandate is left to it, subject to the requirements of the APA, it must permit applicants to use the flexible standard described above and avoid language containing "sinews of command." 659 F.2d at 463.

As we have already noted, "The procedure for seeking such a modification must be reasonably flexible so that applications will neither be arbitrarily prejudged nor condemned to excessive expense." 659 F.2d at 465.

█ 3. In every restriction removal proceeding the Commission must provide "some opportunity for opposition to [the] application to be voiced." 659 F.2d at 465. While we indicated in our previous opinion that an opportunity for evidentiary submission by applicants or opponents might be helpful,[6] we are without authority to prescribe the Commission's procedure so long as it provides a method by which opponents to an application may enter an appearance and make the basis for their opposition known.

4. In every proceeding by which authority to carry general commodities is sought, the ICC is ordered not to grant bulk commodities authority to the applicant without requiring some showing that the applicant is "fit, willing, and able" to provide the bulk commodity transportation sought. As we have previously held:

> By stating that it will routinely grant authority to carry bulk commodities to all applicants requesting general commodities authority, the Commission has exceeded its statutory duty to issue a certificate only to persons "fit, willing, and able to provide the transportation to be authorized by the certificate."

659 F.2d at 465 (footnotes omitted). To further implement this order, the ICC shall rescind the "guideline" mandating the improper result, 45 Fed.Reg. 86,747, 86,759 (1980) (to be codified in 49 C.F.R. § 1151.-21(a)).

5. In every proceeding involving a general commodities carrier, the ICC shall not permit the "general commodities carrier [to] eliminate the restriction against house-

5. The "Guidelines" require, as we previously noted:
> if the commodities classification is broadened, the redefinition must conform either to one of the twenty-nine categories of the Standard Transportation Commodities Code (STCC), the commodities definitions set forth in *Descriptions in Motor Carrier Certificates,* 61 M.C.C. 209 (1952) and 766 (1953), or to any other broader class description previously recognized by the Commission. Neither

two named commodities nor part of an STCC class will be considered sufficiently broad. 659 F.2d at 463 (footnotes omitted) (citing 45 Fed.Reg. 86,747, 86,759 (to be codified in 49 C.F.R. § 1137.21(b))).

6. 659 F.2d at 465 ("Opportunities for either applicants or opponents to seek variation from the mandated broad categories is further minimized by the elimination of evidentiary submissions.").

hold goods without demonstrating more than its general commodities certificate." 659 F.2d 467–68. The ICC shall further require in every such proceeding some showing that the carrier is fit, willing, and able to carry household goods, in accordance with the other provisions of the Motor Carrier Act.[7] The ICC shall revise the "guidelines," 45 Fed.Reg. 86,747, 86,759 (1980) (to be codified in 49 C.F.R. § 1137.21(a)), eliminating the provision excepting household goods from general commodities authority, so as to reflect this mandate and the procedure by which it is to be implemented.

## B. NEW CERTIFICATES

Our prior opinion also considered the New Certificates Statement, a policy statement entitled "Acceptable Forms of Requests for Operating Authority," Ex Parte No. 55 (Sub—No. 43A), 45 Fed.Reg. 86,798 (effective Dec. 31, 1980). The following mandate applies to every proceeding pending on the effective date of this opinion and to every proceeding commenced hereafter.

1. In order that persons affected by the ICC's rules and the general public may be properly informed, the Commission is required to announce that those parts of the policy statement not declared invalid are rules and to publish them as such. Our prior opinion held that the New Certificates Statement "is more appropriately to be considered a rule and ... the validity of its prescriptions must be evaluated on this basis." 659 F.2d at 472 (footnote omitted).

Those parts of the "policy statement" mentioned below have been declared invalid as exceeding the authority granted to the Commission by the Motor Carrier Act. The provisions replacing them in compliance with this mandate shall be incorporated into

the rules by procedures complying with the APA.

2. The ICC shall permit applicants to apply for any reasonably broad commodity authority and it shall require a showing that the applicant is fit, willing, and able to carry the commodities for which authority is sought.

As we have stated:

The Commission may not ... require all applicants regardless of circumstances to fit Procrustean [commodity] descriptions, and it may not assume that an applicant fit, willing, and able to carry one commodity in an STCC classification, is fit, willing, and able to carry all commodities in that classification.

659 F.2d at 472.

3. Bulk service authority shall not be extended "to carriers who cannot demonstrate that they are 'fit, willing, and able to provide the transportation to be authorized by the certificate.'" 659 F.2d at 473.

4. "[A]uthority to transport household goods must be excepted from general commodities authority unless the applicant demonstrates fitness, willingness and ability to render that service." 659 F.2d at 473.

5. Authority for service to Alaska and Hawaii shall not be granted based only on a need for service in the other forty-eight states, see 45 Fed.Reg. at 86,803. 659 F.2d at 474. As we stated in our original opinion, the "Commission may, upon remand, however, consider authorizing those forty-eight state carriers who are found to be fit, willing, and able to provide services to Alaska and Hawaii, to render that service upon a representative showing of need." Id.[8]

We reserve judgment on whether the claim made by the household goods interve-

---

**7.** The ICC states that it has not required applicants to show that they possess specialized equipment and that it has drawn inferences of fitness from past successful operations. Nothing in this mandate requires the ICC to depart from this practice.

**8.** Nothing in this opinion alters the requirements for what constitutes a representative showing. See Miller Transporters, Inc. v. United States, 594 F.2d 463, 466 (5th Cir. 1979) ("The practice of permitting area wide authori-

ty on the basis of only a representative showing of the need for new service throughout the area is amply supported by precedent."); National Trailer Convoy, Inc. v. United States, 381 F.Supp. 878, 882 (N.D.Okl.1973) (three judge court), aff'd sub nom. Morgan Drive Away, Inc. v. United States, 416 U.S. 976, 94 S.Ct. 2377, 40 L.Ed.2d 755 (1974); Hudson Transit Lines, Inc. v. United States, 314 F.Supp. 197, 202 (D.N.J. 1970) (three-judge court).

nors that the ICC has improperly held that they are not proper parties to protest the grant of contract carrier household goods authority is properly before us. We note, however, that intervention in agency proceedings and standing to challenge agency actions in judicial review proceedings are not governed by the same standards. 1 K. Davis, Administrative Law Treatise § 8.11, at 564 (1958).[9]

The Clerk shall issue a writ of mandamus in accordance with this opinion. The Clerk is directed to read this opinion by telephone to each of the parties upon receipt, and then immediately to mail each party a copy of it by express or other expedited mail. Except for those parts of the order requiring publication of notice of new rules or rescission of a portion of a guideline or policy statement, *e.g.*, paragraph II.A.1 and the last sentence of paragraph II.B.1, the mandamus order shall become effective at the start of business on the tenth calendar day following the day the order is read to the parties or, if that day is a legal holiday, at the start of the first business day thereafter. The ICC shall, in full compliance with the APA, publish the notices of new rules and notices of rescission of the guidelines and portions of the policy statement excepted from this time limit as soon as practicable thereafter.

**9.** In a later section Professor Davis distinguishes four questions:

(1) Standing of those who are already parties to raise particular questions in an administrative proceeding, (2) standing to intervene in an administrative proceeding, (3) standing to obtain judicial review of administrative action, and (4) standing to resist enforcement of administrative action. 3 K. Davis, Administrative Law Treatise § 22.-08, at 239–40 (1958). *See also id.* at 240 ("a party who will be adversely affected by a particular course of action ought always to have standing to assert that that course of action will be in excess of the agency's statutory power or unconstitutional").

The touchstone for standing to sue under the Interstate Commerce Commission Act is whether the Commission's action threatens or produces a legal injury .... The fact of intervention before the Commission is not enough by itself to establish standing .... Standing is awarded to competitors whose businesses are affected by Commission action as, for example, when new operating rights are granted or new service authorized. *Interstate Investors, Inc. v. United States*, 287 F.Supp. 374, 392 (S.D.N.Y.1968) (three-judge court), *aff'd*, 393 U.S. 479, 89 S.Ct. 707, 21 L.Ed.2d 687 (1969). *See also Schwartz v. Alleghany Corp.*, 282 F.Supp. 161, 163 (S.D.N.Y. 1968) (three-judge court) ("If the orders are attacked as exceeding the power of the Commission, plaintiff may proceed here without having been a participant in the ICC proceedings.").