**AMERICAN TRUCKING ASSOCIATIONS, INC.; Film, Air, and Package Carriers Conference, Inc.; National Automobile Transporters Association; Mississippi Trucking Association; National Tank Truck Carriers, Inc.; and Regular Common Carriers Conference, Inc., Petitioners,**

v.

**INTERSTATE COMMERCE COMMISSION and United States of America, Respondents.**

No. 84–4389.

United States Court of Appeals, Fifth Circuit.

Sept. 13, 1985.

Nelson J. Cooney, Gen. Counsel, Kenneth E. Siegel, Alexandria, Va., for petitioners.

Dickstein, Shapiro & Morin, Robert J. Higgins, Joan M. Darby, Washington, D.C., for IBT.

Hugh T. Matthews, Dallas, Tex., for Steere Tank Lines, Inc.

Rea, Cross & Auchincloss, Thomas M. Auchincloss, Jr., Brian L. Troiano, Washington, D.C., for Specialized Carriers.

William F. Smith, Atty. Gen., Robert B. Nicholson, John P. Fonte, Dept. of Justice, John Broadley, Gen. Counsel, I.C.C., Robert J. Grady, Washington, D.C., for respondents.

Before RUBIN, WILLIAMS and DAVIS, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

■ After years of legislative study, "one of the most intensive inquiries" ever conducted by the Senate Committee on Commerce, Science, and Transportation,[1] and pressure by conflicting interest groups, some seeking continuation of full regulation of the motor transport industry and others seeking its complete deregulation, Congress adopted the Motor Carrier Act of 1980.[2] Following a midcourse, Congress reduced but did not eliminate governance of the industry by the Interstate Commerce Commission.[3] The Act gives the Commission broad discretion, but not boundless authority, to structure the continuing regulation of the industry to promote competition and efficiency. In reviewing its actions, we accord deference to both the Commission's policy judgments and its interpretation of the Act. Nonetheless, we weigh its decisions against the statutory text and legislative history of the Act as the sources of administrative authority. "[T]he courts are the final authorities on issues of statutory construction. They must reject administrative constructions ... that are inconsistent with the statutory mandate or that frustrate the policy that Congress sought to implement."[4]

In 1980, the Commission began two rulemaking proceedings to implement the provisions of the Act: one concerning the licensing of motor carriers[5] and the other the removal of restrictions from previously issued licenses.[6] After notice and public comment, the Commission issued final licensing and restriction-removal rules.[7] When these were challenged, we upheld most of the rules promulgated by the Commission but found three provisions beyond its statutory authority. As a consequence, in *American Trucking Associations, Inc. v. I.C.C. (ATA I)*,[8] we directed the Commission:

1. to permit applicants for new certificates of public convenience to "apply for any reasonably broad commodity authority" and to "require a showing that the applicant is fit, willing, and

1. S.Rep. No. 641, 96th Cong., 2d Sess. 2 (1980).

2. Pub.L. No. 96–296, 94 Stat. 793 (1980).

3. *American Trucking Ass'n, Inc. v. I.C.C.,* 659 F.2d 452, 459 (5th Cir.1981), *enforced by mandamus,* 669 F.2d 957 (5th Cir.1982), *cert. denied,* 460 U.S. 1022, 103 S.Ct. 1272, 75 L.Ed.2d 493 (1983) (hereinafter referred to as *ATA I*).

4. *Federal Election Comm'n v. Democratic Senatorial Campaign Comm.,* 454 U.S. 27, 32, 102 S.Ct. 38, 42, 70 L.Ed.2d 23, 30 (1981).

5. Acceptable Forms of Requests for Operating Authority (Motor Carriers and Brokers of Property), Ex Parte No. 55 (Sub-No. 43A).

6. Removal of Restrictions From Authorities of Motor Carriers of Property, Ex Parte No. MC–142 (Sub-No. 1).

7. 45 Fed.Reg. 86,747 and 86,798 (1980).

8. 659 F.2d 452 (5th Cir.1981), *enforced by mandamus,* 669 F.2d 957 (5th Cir.1982), *cert. denied,* 460 U.S. 1022, 103 S.Ct. 1272, 75 L.Ed.2d 493 (1983).

able to carry the commodities for which authority is sought."[9] It might permit any of the three broad commodity descriptions set forth in the new rules, but it must allow any other reasonably broad description. We forbade the Commission to "require all applicants regardless of circumstances to fit Procrustean descriptions" or to "assume that an applicant fit, willing, and able to carry one commodity [included] in a [standard transportation commodity code classification] is fit, willing, and able to carry all commodities in that classification;"[10]

2. not to extend bulk service authority to carriers granted general commodity authority unless the carriers "demonstrate that they are 'fit, willing, and able to provide the transportation to be authorized by the certificate;'"[11]

3. to exclude the states of Alaska and Hawaii from nationwide licenses unless the applicant shows a need for service to or from those states as well as its fitness, willingness, and ability to serve those states.[12]

Because the Commission had not acted to replace the invalidated rules by February 1982, we granted a writ of mandamus in *American Trucking Associations, Inc. v. I.C.C. (ATA II).*[13] The writ required the Commission to rescind the invalidated rules and, as "soon as practicable," issue new rules consistent with our opinion in *ATA I.* Nonetheless, the Commission did not issue proposed new rules until a year and a half later,[14] after the International Brotherhood of Teamsters had filed a petition to hold it in contempt for its failure to issue such replacement rules. Shortly thereafter, in *Steere Tank Lines, Inc. v. I.C.C.,*[15] we held

that (1) the Act requires the Commission to consider an applicant's fitness and willingness to provide transportation of specific commodities in bulk, and (2) the Commission had failed improperly to include restrictions against bulk hauling in granting authority to a carrier that had not sought to render bulk service.

This appeal challenges the provisions of the most recent rules, adopted in 1984. These rules

1. mandate grants of motor carrier operating authority to transport broadly-described commodity categories unless the applicant seeking authority for more narrowly-described commodities justifies the scope of its application;

2. routinely grant licenses to motor carriers to transport named commodities without any commodity or service restrictions and remove service restrictions on named commodity licenses without requiring the carrier to show that it is fit, willing, and able to provide the previously restricted service;

3. proscribe any limitations or service restrictions on general-commodity motor carrier operating licenses except restrictions against the transportation of household goods, explosives, and bulk commodities;

4. routinely grant authority to serve Alaska and Hawaii to those applicants for licensing as contract carriers who show a need for services and fitness, willingness, and ability to serve only the 48 mainland states;

5. permit the issuance of licenses to applicants seeking certain limited, narrowly circumscribed authorities with-

---

**9.** *American Trucking Ass'n, Inc. v. I.C.C.,* 669 F.2d 957, 963 (5th Cir.1982), *cert. denied,* 460 U.S. 1022, 103 S.Ct. 1272, 75 L.Ed.2d 493 (1983) (hereinafter referred to as *ATA II*) (interpreting and enforcing the decision in *ATA I*).

**10.** *ATA I,* 659 F.2d at 472.

**11.** *ATA I,* 659 F.2d at 473. The internal quotation is from the statute, 49 U.S.C. § 10922(b)(1)(A) (1982).

**12.** *ATA I,* 659 F.2d at 474.

**13.** 669 F.2d 957, 964 (5th Cir.1982), *cert. denied,* 460 U.S. 1022, 103 S.Ct. 1272, 75 L.Ed.2d 493 (1983).

**14.** 48 Fed.Reg. 36,285, 36,290 (1983).

**15.** 736 F.2d 1094 (5th Cir.1984).

out a showing that a public need or demand for the service exists.

■ We hold that in adopting rules that place on applicants an evidential burden to demonstrate that their commodity descriptions promote the designs of the Act, extend bulk service authority in specified commodity licenses without a showing of the carriers' fitness or willingness to provide that service, and routinely grant fifty-state authority to applicants for contract carriage licenses, the Commission has violated the Act, and we, therefore, vacate the rules to that extent. We reject the challenges to the other parts of the rules.

## I.

■ Congress found that many of the commodity restrictions in operating licenses "serve little or no public purpose" [16] and the commodity descriptions in these licenses were sometimes "excessively narrow." [17] The Motor Carrier Act of 1980, therefore, requires the Commission to *"reasonably broaden* the categories of property authorized by the carrier's certificate or permit." [18] As we recognized in *ATA I*, the Act gives the Commission wide latitude to define the commodity specifications in a license, for "after forty-five years of regulatory experience, the Commission is presumably qualified to determine the appropriate breadth of the categories." [19] "Yet," as we there said, "the statute does limit the broadening to what is reasonable. This fetters the Commission's discretion and exacts judicial review to determine whether its action is reasonable." [20]

Attempting to interpret Congress' directive, we said:

The carrier must be permitted, both by the Commission's express statement and actual agency practice, to seek some other commodity classification if it can show that use of the tripartite Commission standard would require the transportation of commodities unrelated to those previously authorized or would require the institution of a different type of service, and that the carrier is not fit or is unwilling or is unable to provide the service. The procedure for seeking such a modification must be reasonably flexible so that applications will neither be arbitrarily prejudged nor condemned to excessive expense. Finally, there must be some opportunity for opposition to an application to be voiced. [21]

■ The Commission explained its understanding of these requirements when it adopted the replacement rules now challenged. The Commission said:

This mandate embraces our view that commodity descriptions cannot be so narrowly drafted as to unreasonably impair service responsiveness and operational flexibility, constrain development of potential competition, or inhibit a carrier's ability to respond to industrial change or technological innovation within its selected field of service. [22]

This interpretation is correct. What is questioned, however, is the application of the standard. In implementing that standard, the Commission's replacement rules adopt the same commodity descriptions we found unreasonably broad in *ATA I*. The rules simply add: "any other reasonably broad commodity description *that the applicant shows* will permit responsive service, allow operational flexibility, and promote competition and efficiency in the in-

**16.** *ATA I,* 659 F.2d at 460.

**17.** H.R.Rep. No. 1069, 96th Cong., 2d Sess. 17, *reprinted in* [1980] U.S.Code Cong. & Ad.News 2283, 2299; *see* S.Rep. No. 641, 96th Cong., 2d Sess. 2 (1980).

**18.** 49 U.S.C. § 10922(i)(1)(B)(i) (1982) (emphasis added).

**19.** *ATA I,* 659 F.2d at 461–62.

**20.** *Id.* at 462.

**21.** *ATA I,* 659 F.2d at 464–65.

**22.** Acceptable Forms of Requests for Operating Authority (Motor Carriers and Brokers of Property), Ex Parte No. 55 (Sub-No. 43A) at 6, served April 13, 1984 (not printed) (hereinafter cited as Ex Parte No. 55).

dustry." [23] The petitioners object to the requirement that the applicant who seeks any other reasonably broad commodity description "show" that the description will achieve the Commission's stated objectives. They contend that this requirement imposes an unduly demanding burden of proof on applicants, an additional burden not contained in the Act. The Commission's rejoinder is that, in an unpublished decision that accompanied the rule, it stated that the rule imposes no burden of proof but exacts "only a brief explanation *or minimal evidential showing* confirming that the proposed service authorization is not unduly restrictive under the carrier's particular operational circumstances." [24]

▎ The Commission's requirement of "a brief explanation" why the proposed description is not "unduly restrictive" is reasonable. While the "reasonable broadness" of some commodity descriptions that do not match the three prescribed brackets should be apparent to a regulatory authority with the Commission's expertise and experience, other commodity descriptions may not patently satisfy the "reasonably broad" requirement. The Commission is correct that, at times, determining what is reasonably broad authority "requires difficult line drawing," and, "[i]t is the Commission's, not the applicants', ultimate responsibility to draw that line." [25] To enable the Commission to do so, it may require an applicant to explain briefly why the commodity authorization the applicant seeks promotes, or at least does not defeat, the purposes of the Act. To the extent, however, that the rule imposes a burden of proof on each and every applicant to adduce evidence that the requested commodity description will "permit responsive service, allow operational flexibility and promote competition and efficiency," it constrains applicants to use the embrasive standard classifications. Such an addition-al burden does not heed our admonition that the Commission may not thrust broad authority on an applicant that does not seek it. To do so indulges the "assumption" that the law forbids: that a carrier is fit, willing, and able to provide the broader authorized transportation. Indeed, in argument before us, the Commission conceded that "evidential showing" may have been "an improper use of the word." If so, the Commission must make clear what it exacts.

The replacement rule itself does not clarify whether the applicant is required merely to explain or whether it bears a burden of proof. If by formal explanation of the rule or in practice the Commission interprets the rule to require only a brief explanation, the Commission is not required to change or elucidate the meaning of its language. Accordingly, the Commission may either alter the rule or make clear either in its policy statements or in actual practice that explanation only is required.

## II.

In its decisions that accompanied the adoption of the 1984 replacement rules, the Commission stated that there is "continuing controversy" regarding bulk service restrictions on grants of authority to transport specified commodities. It announced its intention to consider the subject in a separate rulemaking proceeding and declared that in the interim it would follow the Third Circuit's decision in *Port Norris Express Co., Inc. v. I.C.C.*, 729 F.2d 204 (3d Cir.1984).[26] The challengers contend the Commission has, however, adopted as "final," rules that are inconsistent with the decisions in *Port Norris, Steere Tank Lines,* and, ultimately, *ATA I.* For that reason, American Trucking Associations petitioned the Commission for clarification. The Commission failed to clarify the rules and American Trucking Associations

**23.** 49 C.F.R. § 1160.101(b)(4) (1984) (emphasis added).

**24.** Ex Parte No. 55, *supra* note 22, at 6 (emphasis added).

**25.** Brief for Respondents at 13, *American Trucking Ass'n, Inc. v. I.C.C.,* No. 84–4389 (5th Cir. filed Nov. 30, 1984).

**26.** Ex Parte No. 55, *supra* note 22, at 7–8.

sought review of those rules. Counsel for the Commission asserted in argument before us that the Commission is in fact following the *Port Norris* decision during the separate bulk-service rulemaking period. The United States, which joins the Commission on all other issues, does not join in the argument that the present Commission rule is valid.

Motor carrier operating licenses authorize carriers to transport either general commodities (*i.e.*, any and all commodities) or named commodities, sometimes called specified commodities. A license that authorizes a named commodity may identify an individual commodity, such as diesel fuel, or a specific category of commodities, such as petroleum products. Many commodities, including sand, coal, chemicals, and petroleum products, may be transported in either bulk or package form. Bulk transportation requires special equipment like tank trucks for hauling diesel fuel or dump trucks for hauling gravel or sand. Traditionally, therefore, motor carrier licenses authorizing the transportation of named commodities have not conferred authority to transport those commodities in bulk unless the applicant carrier requested such authority and demonstrated its fitness, willingness, and ability to provide that kind of transportation. In fact, named commodity licenses issued in the past have usually contained restrictions against bulk authority.

The Commission's replacement licensing rules state that grants of specified commodities authority "shall not normally contain *any* commodity or service restrictions." [27] The rules, therefore, do not require that the applicant make a specific showing of its fitness, willingness, and ability to provide bulk transportation or other form of specialized service. Similarly, the replacement restriction-removal rules do not require a carrier who currently has authority to transport a named commodity and who seeks to remove a service restriction from its existing authority to make a specific showing of its fitness, willingness, and ability to provide the previously restricted service. [28]

In *ATA I*, we invalidated Commission rules that disallowed all service restrictions, including bulk service restrictions, in licenses granting general commodities authority. We held that the Commission had exceeded its statutory mandate by extending bulk service authority to carriers who "cannot demonstrate that they are 'fit, willing, and able to provide the transportation to be authorized by the certificate.'" [29] We also held that the Commission had erred in routinely removing bulk hauling restrictions from existing general commodities licenses without regard to the applicant's fitness, willingness, and ability to provide bulk transportation. [30] The 1980 amendments to the Motor Carrier Act, we held, did not alter the "fit, willing, and able" requirement, for the "Act continues to require the Commission to exact in the future, as it has in the past, the showing of at least general fitness, willingness, and ability to perform the services authorized by the certificate." [31] The Commission, however, reads *ATA I* as requiring that it receive evidence that the applicant is fit, willing, and able only when it bestows general commodities authority.

---

**27.** 49 C.F.R. § 1160.101(b) (1984) (emphasis added).

**28.** *Id.* § 1165.21(b).

**29.** 659 F.2d at 473, *citing,* 49 U.S.C. § 10922(b)(1)(A) (1982). That provision governs motor carrier licensing and specifies:

> [T]he Interstate Commerce Commission shall issue a certificate to a person authorizing that person to provide transportation ... as a motor common carrier of property if the Commission finds—

> (A) that the person is fit, willing, and able to provide the transportation to be authorized by the certificate ...; and
> (B) ... that the service proposed will serve a useful public purpose, responsive to a public demand or need.

49 U.S.C. §§ 10922(b)(1)(A), (B) (1982).

**30.** *ATA I,* 659 F.2d at 465.

**31.** *Id.* at 470.

This question came before us when Steere Tank Lines opposed the grant to another carrier of specified commodities authority without a bulk restriction, contending that the applicant had not shown that it was fit, willing, and able to haul in bulk.[32] The applicant in that case specifically excepted bulk authority from its application, acknowledging that it had never offered nor did it ever intend to render bulk service. The Commission, nevertheless, refused to insert the bulk restriction, maintaining that to do so would be contrary to Commission policy. The Commission, in an effort to comply with the statute's requirement of "willingness," then gave the applicant thirty days either to accept or reject in toto the unrestricted authorization. We rejected that method of extracting willingness and characterized the Commission's action as a "maneuver that smacks more of gamesmanship than compliance" with the statutory requirement of willingness.[33] We again emphasized that "no certificate shall be issued unless the Commission finds the carrier fit, willing, and able," for the Commission has "a duty to determine whether an applicant has met the statutory requirements, [and] administrative presumptions or coercion cannot vitiate the standard of 'willingness.'"[34] We held, finally, that the *ATA I* analysis is "applicable to grants of bulk authority for specific as well as general commodities."[35]

Both the Third and Eighth Circuits have also rejected the Commission's position that it may routinely grant specified commodity authorizations that do not include bulk restrictions. They have agreed that the *ATA I* analysis which requires a specific fitness showing for general commodity bulk authority is equally applicable to grants of bulk authority for specified commodities.[36]

The Commission states that this issue is the subject of a separate rulemaking proceeding now being conducted and that it is not routinely removing such service restrictions. The replacement rules it has already adopted distinguish between authority to transport general commodities and specified commodities.[37] Although the Commission's policy is to exclude "commodities in bulk ... from *general commodities* authority, absent an applicant's specific demonstration of fitness, willingness, and ability to ... [provide] the specialized service,"[38] the Commission has refused to adopt the same policy with regard to specified commodities. The Commission interprets the Third Circuit decision in *Port Norris* merely as suggesting "strongly ... that [it] consider the factual basis for the exclusion or inclusion of bulk restrictions for various classes of commodities at one time through use of the rulemaking process."[39] With regard to specified commodity licensing, the replacement rules state only that such authority "shall not normally contain any commodity or service restrictions," and the restriction-removal rules continue to provide for routine removal of bulk transportation restrictions.[40] The petitioners, moreover, cite Commission proceedings in which they contend that the Commission has not in practice followed *Steere Tank Lines* and *Port Norris* while it is deliberating on the adoption of new rules.

The replacement rules do not require carriers of specified commodities to show fitness, willingness, and ability to haul bulk

32. *Steere Tank Lines, Inc. v. I.C.C.*, 736 F.2d 1094 (5th Cir.1984).

33. *Id.* at 1095.

34. *Id.* at 1096–97.

35. *Id.* at 1096.

36. *Erickson Transport Corp. v. I.C.C.*, 737 F.2d 775 (8th Cir.1984); *Port Norris Express Co., Inc. v. I.C.C.*, 729 F.2d 204 (3d Cir.1984).

37. 49 C.F.R. §§ 1160.101(a), (b), 1165.21(a), (b) (1984).

38. Ex Parte No. 55, *supra* note 22, at 6 (emphasis added).

39. *Id.* at 8.

40. 49 C.F.R. §§ 1160.101(b), 1165.21(b) (1984).

in order to obtain initial bulk authority or to remove bulk restrictions. In this respect, they are inconsistent with the Act and our prior decisions.

### III.

■ American Trucking Associations contends the Commission should also be precluded from barring routinely other traditional service restrictions. The Motor Carrier Act of 1980 called for a break from at least some traditional regulatory practices to eliminate unnecessarily restricted, fragmented, and anti-competitive licenses. Thus, although an array of routine restrictions on general commodities authority was appropriate under the more restrictive 1935 Act, they are not required by the liberalized licensing standards of the 1980 Act. The challengers protest the Commission's policy of disallowing other service restrictions because, they argue, the transportation of bulk commodities is not the only service that requires special equipment, training, investment, responsibilities, and compliance with federal, state, and local laws and regulations. The transportation of goods, for example, that, because of their size and weight, require the use of special equipment is another specialized field of service that has many of the same characteristics as the transportation of bulk commodities. These arguments were made in the petitioners' brief in *ATA I* and mandamus to this effect was sought in *ATA II*. We rejected these contentions, however, and confined our order in *ATA II* to a bar of the Commission's policy of disallowing restrictions on the transportation of household goods and commodities in bulk. We have not been given any reasons to alter that decision, which has now, as to these matters, become res judicata.

### IV.

Our decisions in *ATA I* and *ATA II* held that the Commission may not grant author-

ity for service to Alaska and Hawaii to applicants for *common* carrier licenses based only on a showing of public need for, and fitness, willingness, and ability to provide service to the other forty-eight states.[41] The replacement rules conform to this, but automatically grant fifty-state authority to an applicant for a *contract* carrier license without any showing of fitness, willingness, or ability to serve all fifty states.[42]

In *ATA I* we said:

Although we refer in this case only to common carrier certificates, the regulations and policy statements concerning contract carrier permits, 49 U.S.C. § 10923, are *similarly affected* by our analysis and conclusions.[43]

As the Commission points out, this does not mean that the rules relating to contract carriage are identically affected by that decision. To justify the distinction it has drawn between common and contract carriers, the Commission relies upon a provision in the Act that forbids it to require a contract carrier "to limit its operations ... within a particular geographic area." [44] This provision, however, does not imply that the Commission may license a contract carrier to serve all fifty states if the carrier neither seeks such authority nor demonstrates fitness and ability to provide it. Presumably, a contract carrier's willingness to serve Alaska or Hawaii would be demonstrated by its contracting to do so, but this desire for business would not demonstrate its fitness and ability to serve those states or a public need for the service. Consequently, for the same reasons given in *ATA I* relating to common carriers, the Commission may not routinely grant fifty-state authority to contract carriers.

### V.

■ The Act gave the Commission authority to abridge the normal requirements

---

**41.** *ATA I,* 659 F.2d at 474; *ATA II,* 669 F.2d at 963.

**42.** 49 C.F.R. §§ 1160.105, 1160.106(e)(2) (1984).

**43.** *ATA I,* 659 F.2d at 457 n. 4 (emphasis added).

**44.** 49 U.S.C. § 10923(d)(1) (1982).

for applicants who seek certain limited, narrowly circumscribed authorities. To obtain these types of authority, set forth in 49 United States Code sections 10922(b)(4)(A)–(E), 10922(b)(9), and 10923(b)(5)(A),[45] a carrier need only show that it is fit, willing, and able to perform the service. A carrier need not demonstrate a public demand or need for the service; Congress has predetermined that such a need exists. These types of authorizations are called "fitness-only" licenses. Both the original and replacement rules [46] set out the permissible breadth of territory and commodities for each type of fitness-only license.

▮ Steere Tank Lines charges that the Commission was required to revise the fitness-only regulations to comport with *ATA I & II*. This argument is without merit because the original rules governing these fitness-only licenses were affirmed by us in those cases. Substantively, Steere's disagreement is with the underlying statutory provisions, which the agency's rules closely track. By eliminating the public need test, Congress intended to encourage carriers to seek these limited licenses, *e.g.* for the carriage of shipments weighing less than 100 pounds, or for service to rural communities that currently have no for-hire motor carriage. To provide this encouragement and to assure "reasonably broad" authorizations for what otherwise would be very limited service, these authorities must be structured expansively. For example, if the commodity class is limited to less-than-100-pound shipments, the territory should be broad (*e.g.* all states); if the territorial authorization is limited to small rural communities, the commodity authorizations should be expansive (*e.g.* general commodities).

## VI.

"Judicial deference to an agency's interpretation of 'its' statute is surely the norm in contemporary administrative law." [47] That deference "should be regarded as a privilege, to be earned in each case by responsible behavior, and not simply as an entitlement conferred by status alone." [48]

The Motor Carrier Act of 1980 designedly imposes limits on the Commission's authority to make policy concerning commodity definitions, service restrictions, and geographic areas. The validity of the Commission's replacement rules cannot be considered apart from the specific statutory authority under which it acts. The constraints imposed by the statutory language of the Act as a whole, interpreted with due regard for its legislative history, compel the conclusion that certain provisions of the

---

**45.** (b)(4) [The requirement that an applicant demonstrate a public need for the service] shall not apply to applications under this subsection for authority to provide—

(A) transportation to any community not regularly served by a motor common carrier ...;
(B) transportation services which will be a direct substitute for abandoned rail service to a community ...;
(C) transportation for the United States Government of property other than used household goods, hazardous or secret materials, and sensitive weapons and munitions;
(D) transportation of shipments weighing 100 pounds or less ...; and
(E) transportation by motor vehicle of food and other edible products ... intended for human consumption, ... and agricultural fertilizers....
(9) [Likewise, this requirement] shall not apply to applications ... for authority to provide transportation for the United States Government of used household goods....

49 U.S.C. §§ 10922(b)(4)(A)–(E), (b)(9) (1982). (b)(5)(A) [The requirement that a contract carrier demonstrate that a proposed service will be consistent with the public interest] shall not apply to applications under this section for authority to provide transportation by motor vehicle of food and other edible products ... intended for human consumption, ... and agricultural fertilizers.... *Id.* § 10923(b)(5)(A).

**46.** 49 C.F.R. §§ 1160.106(a)–(g) (1984).

**47.** Diver, *Statutory Interpretation in the Administrative State*, 133 U.Pa.L.Rev. 549, 598 (1985). *See Griggs v. Duke Power Co.,* 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971); *Fulman v. United States,* 434 U.S. 528, 98 S.Ct. 841, 55 L.Ed.2d 1 (1978); *Ford Motor Credit Co. v. Milhollin,* 444 U.S. 555, 100 S.Ct. 790, 63 L.Ed.2d 22 (1980).

**48.** Diver, *supra* note 47, at 599.

rules here considered are not reasonable and in effect arrogate the law-making function to the Commission. When Congress commanded reasonable broadness, it did not abrogate all restraints. When it exacted fitness, willingness, and ability, it made no exception.

Congress chose neither completely to deregulate motor carriage nor to give the Commission boundless authority to structure remaining regulation toward its own concept of what would promote competition and efficiency in that industry. It has imposed limits on the agency's authority that we have already three times attempted to clarify. To the extent that these issues have been considered in other circuits, our decisions have met with the concurrence of the District of Columbia, Third, and Eighth Circuits. No court has differed.

For these reasons, we hold that the replacement rules are invalid in the following respects, and we vacate them to the extent that they:

1. require applicants for new certificates [and applicants seeking restriction removal] to bear the burden of proving that a commodity description [that is reasonably broad on its face] will permit responsive service, allow operational flexibility, and promote competition and efficiency in the industry;

2. extend authority for bulk service, or remove restrictions against bulk service, to any carrier granted specified commodity authority, without requiring a showing of the carrier's fitness, willingness, and ability to provide the service;

3. routinely grant authority to serve Alaska and Hawaii to applicants for licenses as contract carriers without requiring the carrier to show fitness and ability to provide the service and a public need for the service.

The challenges to the other provisions of the replacement rules are rejected.

Accordingly, we REMAND for further proceedings consistent with this opinion. Costs are to be equally divided.