903 F.2d 308
 14 O.S.H. Cas.(BNA) 1529, 1990 O.S.H.D. (CCH)
P 28,963
 NATIONAL GRAIN & FEED ASSOCIATION, INC., and Great River
Grain Corporation, Petitioners,
v.
OCCUPATIONAL SAFETY AND HEALTH ADMINISTRATION and United
States Department of Labor, Respondents.
FOOD & ALLIED SERVICE TRADES DEPARTMENT, AFL-CIO, et al., Petitioners,
v.
Elizabeth DOLE, Secretary of Labor, Respondent.
 Nos. 87-4960, 88-4256.
 United States Court of Appeals,
Fifth Circuit.
 April 25, 1990.
 
 Jerome J. Reso, Jr., H. Sloan McCloskey, New Orleans, La., for petitioners.
 Marc L. Fleischaker, V. Daniel Palumbo, Washington, D.C., Mike Miller, Fargo, N.D., for amicus curiae, North Dakota Grain Dealers Assoc.
 Randy S. Rabinowitz, Washington, D.C., for intervenor Food & Allied Service Trades.
 Nathaniel I. Spiller, Allen H. Feldman, Steven J. Mandel, Barbara Werthmann, Jay S. Bybee, Leonard Schaitman, U.S. Dept. of Labor, Washington, D.C., for respondents.
 
 
 1
 Robert Myers, Jr., W. Caffey Norman, III, Washington, D.C., for intervenor Millers' Nat. Fed.
 
 
 2
 David C. Vladeck, Alan Morrison, Public Citizen Lit. Group, Washington, D.C., for intervenor Oil, Chemical & Atomic Workers.
 
 
 3
 Richard L. Frank, Philip C. Olsson, Washington, D.C., for intervenor American Feed Ind. Assoc.
 
 
 4
 Marc L. Fleischaker, Washington, D.C., for intervenor Nat. Grain & Feed Assoc.
 
 
 5
 Jay S. Bybee, Leonard Schaitman, U.S. Dept. of Justice, Civ. Div., Ray H. Darling, Exec. Secretary, OSHRC, George R. Salem, Deputy Secretary, Dept. of Labor, Washington, D.C., for Secretary of Labor.
 
 
 6
 Petitions for Review of Orders of the Occupational Safety and Health Administration.
 
 
 7
 Before GARZA, WILLIAMS, and SMITH, Circuit Judges.
 
 BY THE COURT:
 
 8
 We have under submission three motions filed subsequently to the issuance of our substitute opinion, 866 F.2d 717 (5th Cir.1989). Petitioners Food & Allied Service Trades Department, AFL-CIO, et al. ("the unions"), move this court for an order enforcing our judgment. Petitioners National Grain & Feed Association, Inc., et al. ("the industry"), move that we reopen the public record. Respondent, the Secretary of Labor, moves for a lifting of our stay of enforcement. For the reasons set forth hereinbelow, we deny the motions for enforcement and reopening of the record and grant the motion to lift the stay.
 
 I.
 
 9
 Motion To Enforce Judgment.
 
 
 10
 The unions call for immediate enforcement of our judgment, asserting that workers are in need of the protection to be offered by the proposed grain-dust standards and that the Secretary has taken inadequate steps, since the issuance of our prior opinions, to comply with our directive. The Secretary opposes the motion, asserting that on remand the agency is working to accommodate the court's requirements. The industry opposes the motion primarily by means of its motion to reopen the record.
 
 
 11
 There is little doubt that we have ample authority to issue an order directing compliance with our mandate. See, e.g., American Trucking Ass'ns, Inc. v. Interstate Commerce Comm'n, 669 F.2d 957, 960-61 (5th Cir.1982) (per curiam), cert. denied, 460 U.S. 1022, 103 S.Ct. 1272, 75 L.Ed.2d 493 (1983). Here, the unions seek an order requiring the Secretary (a) to file a statement regarding the feasibility of the 1/8-inch action level utilizing sweeping rates that are supported by substantial evidence and (b) to submit an expedited timetable to govern its reevaluation of whether the 1/8-inch action level should be expanded facility-wide. The first request is moot, as the Secretary has now issued her statement regarding feasibility.
 
 
 12
 In her response, the Secretary observes that we have remanded for two purposes: (a) a reconsideration of compliance costs and (b) a consideration of whether to adopt a facility-wide grain-dust standard. The Secretary notes that we set no time limit within which she was to act. Generally, courts "begin with recognition that an administrative agency is entitled to considerable deference in establishing a timetable for completing its proceedings," as "[a]n agency has broad discretion to set its agenda and to first apply its limited resources to the regulatory tasks it deems most pressing." Cutler v. Hayes, 818 F.2d 879, 896 (D.C.Cir.1987).
 
 
 13
 The administrative scheme is such that we accord great deference to the agency in its rulemaking determinations. One factor weighing in the agency's favor is its declared intent to take action. See, e.g., Telecommunications Research & Action Center v. Federal Communications Comm'n, 750 F.2d 70, 80 (D.C.Cir.1984).
 
 
 14
 In Cutler, 818 F.2d at 897-98, the court enunciated the factors to be considered in evaluating an agency's lack of action: (1) the length of time that has elapsed since the agency came under a duty to act, and any prospect of early completion; (2) the presence of any legislative mandate, and the degree of discretion given the agency by Congress with respect to timing; (3) whether injury will likely result from avoidable delay; (4) the presence or absence of bad faith on the agency's part; and (5) administrative necessity, the need to establish priorities given limited resources, and complexity of the task. Having weighed these factors, we determine that the time is not yet ripe for an order of enforcement.
 
 
 15
 The most troubling factor is that of injury. Nevertheless, the Secretary has convinced us that the agency is making good-faith progress and, not unexpectedly, has limited resources with which to accomplish that task.
 
 
 16
 While we deny the motion for immediate enforcement, we direct the Secretary to report to this panel on the status of the agency's review of whether to extend the action level facility-wide. Such report shall be by letter to the clerk filed on or before June 15, 1990. In requesting this status report, we emphasize that we intimate absolutely no view as to whether the action level should be extended facility-wide.
 
 II.
 
 17
 Motion To Reopen the Public Record.
 
 
 18
 The industry asserts that in light of our previous remand, the agency should reopen the administrative record and engage in additional rulemaking proceedings, including the usual notice and comment procedures, with regard to the economic feasibility and the costs and benefits of the 1/8-inch action level standard and with regard to consideration of a facility-wide standard. The industry asserts that there has been inadequate opportunity for review of all of the relevant factors and that, in any event, the agency now is working with stale data.
 
 
 19
 Both the Secretary and the unions oppose the motion. They note that nothing in the Administrative Procedure Act, our prior opinions, or the Occupational Safety and Health Act requires the Secretary to reopen the record to comply with our order of remand. It is well established that we may not require additional procedures not mandated by law. Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc., 435 U.S. 519, 524, 98 S.Ct. 1197, 1202, 55 L.Ed.2d 460 (1978). The respondents also observe that additional formal proceedings also would serve to delay even further the implementation of the 1/8-inch action level.
 
 
 20
 We are persuaded that we should not depart here from the usual rule that a reviewing court should leave the agency free on remand to determine whether supplemental fact-gathering is necessary for correction of the perceived error or deficiency. See Federal Communications Comm'n v. Pottsville Broadcasting Co., 309 U.S. 134, 141-46, 60 S.Ct. 437, 440-43, 84 L.Ed. 656 (1940); Fly v. Heitmeyer, 309 U.S. 146, 60 S.Ct. 443, 84 L.Ed. 664 (1940) (agency has discretionary authority to reopen record if it so chooses). Here, particularly in regard to the issue of the correct sweeping rate, we have already observed, 866 F.2d at 739, that the existing record is well developed.
 
 
 21
 The agency must also be given latitude on the issue of staleness. Here, the record was closed in 1985, and the standard was published in 1987. Given the time required for agency review, such gaps are inevitable, though regrettable. See Vermont Yankee, 435 U.S. at 554-55, 98 S.Ct. at 1217-18.
 
 
 22
 The agency has deferred decision on whether to reopen the record on the issue of a facility-wide action level until the sweeping-rate and cost-benefit questions are resolved. Correctly, the agency concludes that the assessment of costs for priority-area housekeeping will have a bearing upon the agency's decision as to whether to expand the 1/8-inch action level beyond priority areas.
 
 
 23
 In declining to order a reopening of the administrative record, we of course leave the agency free to do so. We expect the agency to take whatever course will ensure a record adequate for a fair and comprehensive determination of the issues.
 
 III.
 
 24
 Motion To Lift Stay.
 
 
 25
 The Secretary requests that we lift our stay of enforcement as to the 1/8-inch action level requirement in priority areas. The Secretary asserts that the standard should now be enforced in light of her new Supplemental Statement of Reasons setting forth, in the Secretary's words, "OSHA's findings and conclusions concerning the economic feasibility of the standard when considered in light of this Court's January 24 [, 1989,] decision." As the Secretary describes the newly-filed document,
 
 
 26
 OSHA recalculated the total costs of the 1/8-inch action level requirement for priority areas using the industry's suggested cleaning rate of 1,500 square feet per hour. Although the resulting cost estimates were significantly higher than OSHA originally projected, OSHA concluded that the standard is economically feasible for the industry as a whole.
 
 
 27
 In our previous opinion, we remanded for a type of cost-benefit justification, namely, that the cost of the rule be reasonably related to the expected benefits. 866 F.2d at 733. We noted, however, that in this context, cost benefit does not mean a rigid arithmetical exercise or a "formal, specific weighing of quantified benefits against costs." 866 F.2d at 733. More specifically, in Asbestos Information Ass'n/N. Am. v. OSHA, 727 F.2d 415 (5th Cir.1984), we indicated that the "reasonably related" language means that the proposed standard "must, on balance, produce a benefit the costs of which are not unreasonable. The protection afforded to workers should outweigh the economic consequences to the regulated industry." Id. at 423 (citing, inter alia, American Petroleum Inst. v. OSHA, 581 F.2d 493, 502-03 (5th Cir.1978), aff'd sub nom. Industrial Union Dep't v. American Petroleum Inst., 448 U.S. 607, 100 S.Ct. 2844, 65 L.Ed.2d 1010 (1980)). As we stated in our prior opinion, 866 F.2d at 733, " 'We cannot say that the cost of compliance is unreasonable if the [standard] in fact alleviates a grave danger' " (quoting Asbestos Information, 727 F.2d at 424 (brackets in prior opinion)). The determination that is called for involves a "considerable" amount of deference to agency discretion. Texas Indep. Ginners Ass'n v. Marshall, 630 F.2d 398, 411 n. 44 (5th Cir.1980).
 
 
 28
 We conclude that the Secretary has met this standard. The new statement filed by the Secretary sets forth in detail her new calculation of costs, based upon the industry's claimed sweeping rate, and explains her analysis that such costs will not result in a threat to the existence or competitive structure of the industry. Given our deference to such administrative findings, we accept the Secretary's conclusion. Moreover, our prior determinations regarding the efficacy of the proposed standard in alleviating death and injury satisfies the other side of the equation, now that the Secretary has performed the modified cost-benefit analysis that our caselaw requires.
 
 
 29
 Hence, we now lift the stay of enforcement of the 1/8-inch action level for priority areas. Our lifting of the stay shall be effective at 12:01 a.m. August 1, 1990, in order to provide the industry with a reasonable time to effect compliance.
 
 
 30
 In summary, we DENY the motion for enforcement, DENY the motion to reopen the record, and GRANT the motion to lift the stay, effective August 1, 1990. SO ORDERED.